**R. E. BOYD and Odessa Boyd, Appellants,**

**v.**

**UNITED STATES of America, Appellee.**

**No. 15108.**

United States Court of Appeals
Eighth Circuit.

May 11, 1955.

494

Robert C. Downie and Wm. M. Moorhead, Little Rock, Ark., submitted brief for appellants.

Reginald W. Barnes, Attorney, Department of Justice, Washington, D. C. (Perry W. Morton, Asst. Atty. Gen., Osro Cobb, U. S. Atty., Little Rock, Ark., and John F. Cotter and George S. Swarth, Attorneys, Department of Justice, Washington, D. C., on the brief), for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

The Government condemned, as part of the site for an air base, 15.7 acres of appellants' 82-acre farm in Pulaski County, Arkansas, leaving appellants with their residence, outbuildings and 66.3 acres of land remaining. On a trial without a jury, the District Court awarded them compensation of $1375, and they have appealed from the basis and amount of the court's award.

In substance, their contention for reversal is that they were allowed compensation only for the taking and severance of the 15.7 acres from their small farm unit, and were erroneously denied damages, and the opportunity to prove any, for the diminution in market value which additionally would be occasioned to their remainder by the fact that the 15.7 acres taken were to be used for air-base purposes, as opposed to some other or general utilization of the taken property.

The applicable general principles are well settled. "Whenever there has been an actual physical taking of a part of a distinct tract of land, the compensation to be awarded includes not only the market value of that part of the tract appropriated, but the damage to the remainder resulting from that taking, embracing * * * injury due to the use to which the part appropriated is to be devoted." United States v. Grizzard, 219 U.S. 180, 183, 31 S.Ct. 162, 163, 55 L.Ed. 165, 31 L.R.A.,N.S., 1135. The use to which an appropriated part of a tract is to be devoted means, for purposes of any depreciating injury occasioned to its adjoining remainder, "the uses to which the land taken may, or probably will, be put". Sharp v. United States, 191 U.S. 341, 352, 24 S.Ct. 114, 116, 48 L.Ed. 211. But a landowner's right to compensation for such a depreciating injury to his remainder has relation only to the affecting use that may be made of the taken part of his own tract and "does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking."

Campbell v. United States, 266 U.S. 368, 372, 45 S.Ct. 115, 117, 69 L.Ed. 328.

■ Appellants therefore could not claim a right to prove or recover for any diminution in value which might be occasioned to their remainder by the fact that it was being made to adjoin an air base generally, of which their 15.7 taken-acres were to constitute merely some slight, incidental or abstract segment—for example, a vacant border area—having no specifically demonstrative and directly affective utilization or function. Any depreciating injury which would exist to their remainder in such a situation would have to be regarded legally as being simply a consequence from the air base generally and as not being provably a product of their 15.7 taken-acres. And in respect to such a general, depreciating injury only, appellants would, of course, be in no different position of damage than their neighbors, whose farms the air base also adjoined, although none of their land had been appropriated for inclusion therein.

■ Hence, only as appellants might be able competently to establish—from the plans and scope of the undertaking, the location of and the part intended to be played by their 15.7 taken-acres therein, and other definitive, probative elements in the situation—that their included tract was intended or would be reasonably likely to have some particular utilization in the project, which, from its nature and immediacy to their remainder, would make it capable of contributing a direct and identifiable element of depreciation, out of the componency of that which otherwise, as a matter of legal certainty, would simply be attributed to the project generally or as a whole, could there exist any basis for such injury or damages to their re-

mainder as appellants here claim that they were denied the right to prove and recover for.[1]

The intended use of appellant's taken land for something such as a location for large gasoline tanks or ammunition storage in the project, adjoining their residential remainder, will sufficiently illustrate what might with adequate certainty constitute a direct and identifiable element of depreciation so as to afford a possible basis for proof and recovery. Cf. West Virginia Pulp & Paper Co. v. United States, 4 Cir., 200 F.2d 100.

In relation to the question which is thus involved, the appeal has been submitted to us on an agreed statement of the case merely, under our Rule 10(f). The statement is somewhat meager and general, but our reading of it impresses and persuades that what the trial court actually precluded appellants from delving into was the depreciation which would be caused to their remainder by the location and operation of the air base generally and not by some particular utilization of their 15.7 taken-acres in the project which might itself give rise to some direct and identifiable depreciation out of that occasioned by the air base as a whole.

While, as we have indicated, the agreed statement is sparse as to the details of the situation, the information is given in the Government's brief that the air base was to consist of an area of 5139.47 acres, with appellants' 15.7 taken-acres being located at the extreme northern tip—a fact which appellants do not challenge; which obviously was before the trial court; and which we think is entitled to be considered in relation to the propriety of the court's rulings.

■ The first ruling complained of by appellants is the court's sustaining of

1. Whether the rule may be broader than this in a situation where a taken tract, though constituting a mere part, is of such indispensability or dominancy in a project as virtually to control it as a whole, we need not here consider. We therefore do not presume to examine the significance or implication, if any, of

the statement in Campbell v. United States, supra, 266 U.S. at page 371, 45 S.Ct. at page 116, that "The land taken from plaintiff was not shown to be indispensable to the construction of the nitrate plant or to the proposed use of the other lands acquired by the United States."

objection to the taking of interrogatories by them, intended to establish the location of the runways of the base; the flight patterns for the field; the altitude at which the planes would cross over appellants' farm; and (in the language of the agreed statement) "the number, size, type of motor and frequency of operation of aircraft to be used on said military air field."

█ Next, appellants complain of the restrictive ruling made by the court in the pre-trial conference, that it would exclude any evidence attempted to be offered by appellants on the trial as to the general, public pronouncement which had been made by the Government that the project was to be an air field for jet-propelled bombers, and as to the maps distributed in connection therewith "showing generally the location of the runway to be constructed immediately and the alternate runway to be constructed in the future, all of which (appellants) claimed depreciated the value of their remaining, contiguous 66.3 acres."

█ And finally, complaint is made of the court's sustaining of objection on the trial to appellants' offer of proof as to damage to their remainder "by reason of it being adjacent to a military air field, public maps of which show generally that (appellants') house will be close to a runway under construction and under the takeoff-landing area of a runway proposed for future construction."

Realistically viewed, it seems clear that none of this went or was intended to go to the establishment of some particular utilization of appellants' taken, tip-end, 15.7 acres. The fact that runways, located on other land taken, were so directioned that planes would take off or come in over appellants' remainder would not make their 15.7 taken-acres constitute a direct and identifiable element of depreciation merely because it was an abstract part of the general air-base area. It must be remembered in this connection that any subsequent operation of the field in such a manner as to cause appellants' remainder to be subjected to flights of aircraft over it, so low and frequent as to constitute a direct and immediate interference with their enjoyment and use thereof, would itself give rise to a wholly independent right of compensation for the appropriation of an easement as to the remainder. See United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L. Ed. 206. The present condemnation does not cover any such possible, subsequent and additional taking.

We conclude that the rulings complained of cannot be said to have been prejudicially erroneous in the situation

Affirmed.