**UNITED STATES of America,
Petitioner-Plaintiff,**

v.

**329.05 ACRES OF LAND, MORE OR LESS, SITUATE IN the TOWN OF NEWBURGH, COUNTY OF ORANGE, State of NEW YORK and Eva Kooperman, et al., Defendants.**

United States District Court
S. D. New York.
Sept. 30, 1957.

68

Harry T. Dolan, Sp. Asst. to the Atty. Gen. of the United States, for petitioner-plaintiff.

Kooperman & Kooperman, Ellenville, for E. Kooperman, Ernest Manassero and Eusebia Manassero.

Scott & Hoyt, Newburgh, for Joseph J. Less and Martha Montgomery.

NOONAN, District Judge.

This action was brought by the Petitioner-Plaintiff pursuant to Title 40 U.S. C.A. § 258a and Rule 71A of the Federal Rules of Civil Procedure (28 U.S.C.) to condemn certain land in the Town of Newburgh, Orange County, New York, for storage of ammunition in three ammunition storage vaults to be built on the property for a road to the vaults, and for safety easements around the storage vaults.

The suit was instituted on August 24, 1954, and an order for immediate possession was made on that date. Certain other areas are included by amendment and order on May 10, 1955.

The government being within its rights in the taking, the only issue is the value of the land as of those dates. This opinion is rendered in lieu of formal Findings of Facts and Conclusions of Law.

Involved in this taking are portions of the lands in four ownerships, which will be hereinafter referred to as lands of Kooperman, Manassero, Montgomery and Less. Of the Kooperman Lands, approximately 12 acres were taken in fee (B-200); 46.74 acres were encumbered by safety easements (B-200-E-1 and B-200-E-4); and approximately 6.96 acres were encumbered by an access road easement

(B-200-E-2 and B-200-E-3). Of the Manassero property, approximately 113.-10 acres were taken in fee (B-201); and 25 acres were encumbered by a safety easement (B-201-E). Of the Montgomery Lands, approximately 18.73 acres were taken in fee (B-202); and 47.75 acres were encumbered by a safety easement (B-202-E). Of the lands of Less, approximately 6.60 acres were taken in fee (B-206); and 18.73 acres were encumbered by a safety easement (B-206-E).

The nature and character of the safety easements appropriated was to restrict and limit an owner's use of the land for the building of abodes for human habitation or the grouping of large numbers of people in the area, and the access road easements on the Kooperman property were acquired as a means of ingress and egress from Rock Cut Road to the Ammunition Storage Depot located on the Manassero property. It was expressly provided in the taking of the access road easements that the road was to be constructed and maintained at the expense of the Government, but reserving to the owner mutual rights to the benefits and use of said road for any and all purposes. The purpose of the safety area easement, as disclosed by the testimony, was to create a buffer zone around the actual military reservation and Ammunition Storage Depot, so that the lands could not be used for purposes of human habitation; but in all other respects, the owners' rights to use said land for any other purposes (for which it was suitable and adaptable) were reserved to the owners, except that gatherings thereon of more than twenty-five persons could be prohibited.

The only land in this taking which involved actual use for ammunition storage or the construction of structures to house such ammunition was confined entirely and exclusively to the Manassero property (B-201) which consisted of a fee taking of 113.10 acres. On no portion of any other lands involved in this proceeding has there been any construction except for an access road. Nor is there any evidence that any of the additional lands involved in this action (with the exception of Tract B-201) is to be used in connection with the reservation and ammunition storage facilities constructed on the Manassero property. The only use to which any portion of the remaining lands is being put or could be put by the Government (apart from the posting of signs thereon) is that portion of the property comprising the access road easements in the Kooperman property. Of the 113.10 acres taken in fee from the Manassero property (B-201), only 18.65 acres are used for the ammunition storage area and this is completely enclosed by a security fence. This 18.65 acres, upon which the Ammunition Storage Depot has been constructed, consists of approximately 50% marshy land and 50% (the easterly slope), of high ridge land. The ammunition storage igloos have been constructed into the easterly slope of this ridge and are approximately two-thirds concealed therein. It thus appears that the ammunition storage activities are entirely confined to this 18.65 acres located on the Manassero property. This is surrounded by 94.45 acres, also acquired in fee, and comprising the remainder portion of B-201; it completely surrounds the ammunition storage facilities and security fence. This leaves a very substantial area as a buffer zone or for any conceivable expansion of the ammunition storage facility. (Govt. Exh. 1) It would appear from the testimony, and from Government Exhibit 1, that the additional fee and easement areas taken in connection with the Manassero, Less, Montgomery and Kooperman properties, are for the purpose only of expanding the buffer zone surrounding the fee taking on the Manassero property.

The proof does not indicate that any of these buffer zone areas have been put to any use by the Government, nor indeed has the Government acquired the right to make any use of the areas involved in these safety easements other than the right to enforce the restrictions imposed upon the owners' use of the land.

The lands involved in this action are located in a comparatively undeveloped area in the westerly part of the Town of Newburgh and are bounded generally by Rock Cut Road on the west, Orange Lake on the South and Route 300 on the east and north. All of the parcels involved constitute portions of land which formerly or at the time of the taking were used for limited agricultural purposes. It does not appear that any part of the lands involved in the taking, or the remainder lands of the owners not taken, had been the subject of any planned subdivision or development, or that any portions thereof have ever been sold in smaller units for small estates or residential homesites. A portion of the lands of Kooperman not taken in this proceeding and located approximately 2,500 feet south of the southeasterly corner of Tract B-200-E-4 ·has some undetermined and currently inaccessible frontage on Orange Lake. The taking by the Government of these various fee and easement parcels was done in such a way that the minimum road frontage on all of the properties fronting on Rock Cut Road and East Rock Cut Road, which remains unencumbered, is a minimum of approximately 200 feet in depth, thus leaving available to these owners all of the prior road frontage on these highways, as well as certain lands for residential subdivision, when and if a market and demand exist therefor. It appears from the evidence that the lands of Kooperman and Manassero, before the taking, were approximately equally divided between high ridge land and marshland. It is the Government's contention (and the court agrees) that these marshlands also extended into the easterly portion of the Montgomery property (Govt. Exh. 1).

The testimony and inspection of these properties demonstrated that, with the exception of a small portion (approximately 5 to 7 acres) of the Kooperman property, which was used for poultry operations, most of the land had not been used for farming purposes to any appreciable extent for many years. The only farming activities of any consequence on any of these lands (apart from Kooperman's poultry operation), is a small dairy operation on the Less property. The lands in general could be properly classified as agricultural and farmlands of little more than marginal character. There were no buildings or structures located on any part of the lands taken by the Government in fee or in the easement areas. While residential subdivision is likely in the future, that future appears to be several years off.

As part of just compensation, the owner is entitled to receive compensation for any diminution or impairment in the value of his remainder lands, resulting from the part taken or occasioned by the use, actual or likely, of the portion of his own land that has been appropriated, but this does not include damage to the residue by reason of the use of adjoining lands of others in connection with the same project. Boyd v. United States, 8 Cir., 222 F.2d 493; Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328. In the Boyd case, the Court, relying upon the decision of the Supreme Court of the United States in Campbell v. United States, said: (222 F.2d at page 494)

> "The use to which an appropriated part of a tract is to be devoted means, for purposes of any depreciating injury occasioned to its adjoining remainder, 'the uses to which the land taken may, or probably will, be put' * * * But a landowner's right to compensation for such a depreciating injury to his remainder has relation only to the affecting use that may be made of the taken part of his own tract and 'does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking.'"

In other words, the doctrine of severance damage does not conclude damage to one owner in partial-taking cases, which may result or flow from the use to which the Government may put other lands in

the same project. Thus, only Manassero could properly claim severance damage.

■ Where severance damage is applicable, the prevailing method of valuation is to find the value of what is actually taken and add to that finding the damage to the remainder affected. The total represents the value of the part taken as well as the severance damage to the remainder. West Virginia Pulp & Paper Co. v. United States, 4 Cir., 200 F.2d 100.

■ The burden of proof, in establishing all types of claimed compensation, including severance damage, rests upon the owner and not upon the Government. Westchester County Park Commission v. United States, 2 Cir., 143 F.2d 688. This includes any damage claimed to result from the imposition of easements. The valuation of an easement necessarily must be measured by the loss or diminution in value of the lands upon which the easements are imposed and which directly result from the restrictions or limitations upon the use of the land imposed by the easements appropriated, and should represent the diminution in market value, if any, which is due to the impairment of the land's utility. United States v. 72.35 Acres of Land, etc., D.C., 150 F.Supp. 271. While it is permissible under Federal law to offset benefits against severance damage in a partial-taking case (United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336), the court does not find that the road herein actually confers any appreciable benefit.

■ The primary criterion of damage to the lands is the market value of the remainder thereof immediately before and immediately after the taking and the market value of the property taken at the time of the taking.

■■ The market value of land appropriated in a condemnation proceeding should be determined largely on the basis of similar sales in the vicinity made at or about the same time. United States v. 63.04 Acres of Land, Lido Beach, Town of Hempstead, 2 Cir., 245 F.2d 140. In determining that value, all available uses and purposes for which the land is suitable and adaptable should be considered.

■ Sales of the same property or those of a comparable character in the same neighborhood in recent times constitute the best evidence upon which to establish value in a condemnation proceeding. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336.

Nonetheless, no one sale can be conclusive since almost every piece of land is different from every other piece of land in its particular characteristics. All that we can do is study several sales, note the dates thereof and the types of land involved, and arrive at some figure which makes allowances for such differences as are apparent.

A group of experts would be better equipped to arrive at such a figure in all condemnation cases, but the law does not require their appointment.

By failing to request either a jury or a commission to determine valuation the parties have caused a judge sitting in New York City to listen to low estimates of valuation given by well-qualified experts for the government, high estimates given by well-qualified experts for the landowners (or rather in part the previous landowners), and then to make a personal inspection of the premises; then, based on what he has heard and seen and on his own lack of knowledge of real estate valuations in an area far from New York City, the judge is to determine what the value of the property was some years before he ever saw it.

The opinions of the experts herein are, as usual, quite far apart. They all have some bases in fact, however, so it is only by weighing them, together with the reasons given by those experts for their opinions, that the court reaches its valuations.

The government experts may well have been assuming conditions of "forced" rather than voluntary sale. (S.M. pp. 1007 and 1115). On the other hand, the landowners' experts appear to have had a confused concept of severance damage not applicable to most of the parcels of land involved.

The court does not find there to be any consequential or severance damage compensable in this action.

The comparable sales used by both sets of experts are of some guidance, but land being, as described above, a peculiarly individual thing, many factors go into the determination of the value of a parcel of land.

The court feels that the comparable sales most conducive to arriving at the value of the land herein are:

(1) Government Sale #3 (Campbell Farm to Doerring, Jr., 1954, 150 acres @ $150), which represented a large amount of acreage not as well located;

(2) Government Sale #6 (Wygant to Heotzler, 1954, 3.9 acres @ $375 after deducting allowance for improvements) which represents a small amount of acreage very close to the subject property for small estate use on property of a slightly better quality; (also referred to as Panarello Sale # 3).

(3) Government Sale #7 (Buyl to Pomarico, 1953, 10.7 acres @ $350) which represents a small amount of acreage for residential homesites in cleared level land;

(4) Panarello Sale #1 (Snider to Fallon, 1954, 64 acres @ $390) representing better topography and better location; and

(5) Panarello Sale #8 (Masarachia to Schoonmaker, 1955, 100 acres @ $300) representing better topography and location.

Based, therefore, on all of the testimony and evidence in the case (with particular emphasis on the five above listed sales as modified by the peculiarities of the particular parcels herein involved, the court's own viewing of the parcels, and the law applicable to the case, the court makes the following determinations of value:

### Kooperman Damages

Tract B–200; 12.00 acres in fee; (6 acres wooded marsh @ $25; 6 acres dry land @ $250) $1,650.

Tract B–200–E–1; 30.44 acres for safety easement (dry land @ $250; depreciated 80% by easement restrictions, or damages @ $200) $6,088.

Tracts B–200–E–2 and E–3; 6.96 acres for access road easement (dry land @ $250; depreciated 90% by access road, or damages @ $225) $1,566.

Tract B–200–E–4; 16.30 acres for safety easement (wooded marsh @ $25; depreciated 40% by safety easement, or damages @ $10) $163.

Total damages: $9,467.

### Manassero's Damages

Tract B–201; 113.10 acres in fee (2/3 high, dry land @ $250, 1/3 low marshy land @ $25); $19,793.

Tract B–201–E; 25.00 acres for safety easement (dry land @ $250; depreciated 80% by safety easement, or damages @ $200) $5,000.

Total damages: $24,793.

### Montgomery Damages

Tract B–202; 18.73 acres in fee; (10 acres upland @ $250; 8.73 acres marshy area @ $25) $2,718.

Tract B–202–E; 47.75 acres for safety easement (1/3 marshy land @ $25; depreciated 40% by safety easement, or damages at $10; and 2/3 high, dry, land at $250 per acre, depreciated 80% by the safety easements, or damages at $200) $6,525.

Total damages: $9,243.

### Less' Damages

Tract B–206; 6.6 acres in fee (high, dry land [in better condition than the land of the other defendants] @ $350) $2,310.

Tract B–206–E; 18.73 acres for safety easement (high, dry land of B–206 quality @ $350, depreciated 80% or damages at $280) $5,244.

Total damages: $7,554.

In accordance with the above, the court finds that:

(1) There is no consequential or severance damage to any parcel of the above described land which is compensable herein.

(2) The fair value and just compensation which should be paid by the government to the defendants herein for the taking of the fees and easements indicated is hereby fixed and determined as follows:

A. To Kooperman; $ 9,467
B. To Manassero; $24,793
C. To Montgomery $ 9,243
D. To Less $ 7,554

Submit judgment in accordance with the foregoing.