125 N.J. Super. 31 (1973)
308 A.2d 362
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, PLAINTIFF-APPELLANT,
v.
OLDWICK FARMS, INC., DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued May 30, 1973.
Decided July 18, 1973.
*33 Before Judges KOLOVSKY, MATTHEWS and CRAHAY.
Mr. Philip R. Carlin argued the cause for appellant (Messrs. Goldberg & Carlin, attorneys).
Mr. James J. Sheeran argued the cause for respondent.
PER CURIAM.
By its amended complaint plaintiff sought to acquire, by condemnation, "an easement to facilitate the overhead passage and maintenance of [overhead electric] transmission lines across * * * and the right to build any temporary facilities reasonably necessary for the construction and placement of said overhead lines as a right-of-way upon, over, under, across, and along" two parcels of land which are part of the 128.73-acre tract (exclusive of the public right-of-way), owned by defendant in Tewksbury Township, Hunterdon County.
The 128.73-acre tract, on which there is presently a dwelling house and farm buildings, is located on the west side of Hunterdon County Route 517 (Oldwick-Fairmount Road) in Oldwick. Defendant's title includes the land to the center of that roadway, subject however to the public easement for the use of the road.
The controlling zoning ordinance permits the use of the property for agricultural purposes and for one-family residences, with a minimum lot size of three acres. Although the land is now in farm use and has not been subdivided, it is agreed that the highest and best use is residential with a minimum lot size of three acres.
*34 The two parcels to be subjected to the easement each front on Route 517. One has an area of 0.002 acres, the other an area of 0.502 acres.
The easement acquired is presently used so that transmission lines pass over the two last-mentioned parcels. Although no towers are constructed on defendant's property, at least three large towers have been erected on lands near defendant's land which permit electric transmission cables and shield wires to cross over defendant's land and to run parallel to and close to a long stretch of defendant's remaining frontage along Route 517.
After hearing testimony the commissioners, limiting their considerations to the easement taken and the damage to defendant's remaining lands resulting from the taking of the easement, awarded defendant the sum of $2,250.
Prior to the trial of the appeal, defendant applied to the court for
* * * a ruling setting forth the proper measure of damages to be applied in order to determine the depreciation in the value of the remaining land of the defendant-appellant as a result of the taking of a portion of its lands.
The court ordered that:
the effect of the plaintiff-respondent's entire project upon the remainder lands of the defendant-appellant is to be considered in order to determine the amount of the depreciation in the value of the remaining land of the defendant * * *.
Plaintiff sought leave to appeal from that order. We denied leave but directed that
At trial, the "consequential damages" awarded defendant and representing the effect of plaintiff's entire project upon the remainder lands of the defendant are to be computed separately so that they are capable of severance from the condemnation award.
After the trial de novo the trial judge, sitting without a jury, found that defendant was entitled to an award of *35 $1,500 for the actual taking and $38,500 as "consequential damages" to the remainder of its lands, stating:
It is my feeling that the line as it approaches the defendant's property and as it leaves it and is visible that it does have an effect on the economic value of the land.
And I think and determine that this constitutes a damage for which the plaintiff should compensate the defendant, and it is my opinion that the property is worth less for residential subdivision after the line and towers have been installed than it would have been had there been no power line or towers either on the property or visibly in front of it for some thousand feet or so, and I think that this constitutes consequential damages for which the property owner should be compensated. * * *
In limine it should be noted as a basic principle that where, as here, only part of an owner's land is taken, the owner is entitled not only to the value of the land actually taken but also to the amount of any diminution in the value of his remaining lands which may be attributed to the taking. Ridgewood v. Sreel Investment Corp., 28 N.J. 121, 125 (1958). The measure of damages to be employed in such a case is either the difference in the value of the lands before and after the taking, or the value of the portion taken plus diminution in the value of the remainder as a result of the taking. State v. Azzolina Land Corp., 101 N.J. Super. 103, 106 (App. Div. 1968); Sterner v. Nixon, 116 N.J.L. 418, 420 (E. & A. 1936). Courts in this State have spoken in terms of "proximate effect" as the guideline for determining whether the dimunition of the value of the remaining lands resulted from the taking of the portion of the land. Cf. State v. Birch, 115 N.J. Super. 457, 462 (App. Div. 1971); Ridgewood v. Sreel Investment Corp., above.
With respect to the primary issue raised on this appeal  whether a condemnee, part of whose property has been taken, is entitled to compensation for damage to the remainder of his land where such damage is attributable to the effect of the total improvement constructed by the condemnor, *36 including portions on adjoining lands acquired by others  the general rule is said to be that where it is possible to separate the element of damage to remaining lands due to use of the land taken from the owner, from the damage thereto flowing from the use of lands taken from others for the same project, the measure of damage is limited to that caused by use of the land taken from the owner. See 4A Nichols, Law of Eminent Domain, § 14.21(1) at 14-53.
The leading case expounding the rule just stated is Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924). In Campbell the government condemned a portion of Campbell's land for the construction of a nitrate plant, and in connection therewith it also acquired lands adjoining Campbell's owned by others. The federal District Court found that the value of the land taken was $750 and that as a result of the taking Campbell's remaining property was damaged to the extent of $2,250. The court also found that by reason of the use to be made of the adjoining lands taken from others for the same purpose Campbell's remaining land was damaged in an amount of $5,000, but it disallowed those damages. On appeal the Supreme Court stated that the damage to the remainder of Campbell's land as the result of the taking of the portion of his land was separable from the damage caused by the same use made of adjoining lands taken from others, and that "the proposed use of the lands taken from others did not constitute a taking of his property." 266 U.S. at 371, 45 S.Ct. at 116. The Supreme Court reasoned that if the adjoining property owners had put their lands to the same use as that proposed by the government, they would not have been liable to Campbell for any depreciation in the value of his property as a result thereof, and that since "the liability of the United States is not greater than would be that of private users," the government as condemnor should also not be liable for such damages.
*37 Defendant contends, however, that where a part of a property owner's land is taken by a condemnor for a public improvement, and the part taken "constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put," the land owner is entitled to recover the full damage to his remaining land which may be attributed to the whole of the public improvement, even though such portions of the improvement are located on land taken from adjacent owners. In support of this argument, defendant cites Nichols, op. cit., § 14.21 [1] at 14-54 to 14-61, including cases collected at Note 9; City of Crookston v. Erickson, 244 Minn. 321, 69 N.W.2d 909 (Sup. Ct. 1955); Andrews v. Cox, 129 Conn. 475, 29 A.2d 587 (Sup. Ct. Err. 1942), and State v. Bd. of Ed., Elizabeth, 116 N.J. Super. 305 (Law Div. 1971).
The trial judge did not make a determination in his oral opinion as to whether the portion of defendant's land taken constituted an integral and inseparable part of the whole project. He merely stated that the condemnee's remaining land was damaged, or the value thereof diminished, by the existence of the transmission towers on adjoining lands which were visible from defendant's lands.
While it is apparent that the transmission lines which transverse defendant's property are physically an "integral and inseparable part" of the total project, we do not find that that fact requires a departure from the rule enunciated in Campbell v. United States, above. Here, as in Campbell, the damage to defendant's remaining lands caused by the fact that the aerial easement for the transmission lines cross a small corner of its property are readily separable from the damage to the remaining tract which may be attributed to the existence of the transmission towers on adjoining lands belonging to others. The principal distinction between the damages is that the existence of the transmission lines over a corner of defendant's property could have very little effect on the value of the remaining tract as a whole, while the existence of the transmission towers on adjoining *38 property could be regarded as having the effect of making the entire remaining land less desirable for purchase by one interested in developing.
In this respect the cases upon which Oldwick relies appear to be clearly distinguishable. In those cases, unlike here, the damages to the remaining lands resulting from the taking of a portion of the tract were inseparable from the damages to the remaining land attributable to the whole improvement. Since it is here practicable to separate the use of the land taken from that of the adjoining land, defendant is entitled to compensation only for the land taken and the use to which it will be put, and not for the use which will be made of the adjoining lands.
Plaintiff also contends that the interest payable on the net condemnation award should have been computed from the date that it actually took possession of the portion of the land in question, i.e. April 26, 1971, rather than from the date of the institution of the action on May 25, 1970. In support of this argument plaintiff points out that it, unlike public condemning authorities, is not entitled to take possession of condemned property until the filing of the commissioners' report and the payment, either directly to the condemnee or into court, of the amount of such an award. N.J.S.A. 20:3-33. We disagree. We read the provisions of N.J.S.A. 20:3-31 clearly to indicate that interest is to be computed "from the date of the commencement of the action" rather than from the date the condemnor went into possession of the property. Interest, of course, should be computed only on the $1,500 award.
The judgment of the Law Division is modified to eliminate that portion which awards defendant "consequential damages" of $38,500. As modified, the judgment is affirmed.