417 So.2d 268 (1982)
LEE COUNTY, Florida, a Political Subdivision of the State of Florida, Appellant,
v.
The EXCHANGE NATIONAL BANK OF TAMPA, As Trustee, et al., Appellees.
No. 81-1176.
District Court of Appeal of Florida, Second District.
May 28, 1982.
As Amended on Denial of Rehearing July 21, 1982.
Frank A. Pavese and Robert L. Donald of Pavese, Shields, Garner, Haverfield, Kluttz & Cottrell, Fort Myers, for appellant.
Harold Hume, Jr. of Allen, Knudsen, Swartz, DeBoest, Rhoads & Edwards, Fort Myers, and S.W. Moore of Brigham, Reynolds, Moore, Muir & Gaylord, Sarasota, for appellee The Exchange Nat. Bank of Tampa, as Trustee.
GRIMES, Acting Chief Judge.
This is an appeal from that portion of a condemnation judgment which awarded severance damages to the appellee.
In October of 1979, Lee County filed suit to condemn some 3,500 acres from various owners for use in conjunction with the proposed Southwest Florida Regional Airport. Appellee holds title as trustee to 2,932 acres of undeveloped land lying northeast of the proposed airport. The county condemned 127 acres of appellee's land which represents the most easterly extension of the airport site. A sketch showing the relationship between appellee's land and the proposed airport follows:
*269 
Preliminary studies for the airport indicated that there would be a significant noise impact on the area surrounding the airport. To ameliorate the noise problem, the county determined to take far more property than was needed for the actual airport facility. The rest is intended to form "environmental buffer zones" at both ends of the airport. All of the 127 acres of appellee's property being taken is within the buffer zone and will not be developed or disturbed in any manner.
On the issue of severance damages, the court denied the county's motions to exclude evidence of any decrease in value of appellee's remaining property caused by the construction of the proposed facility on property taken from other landowners. Thus, appellee's appraisers were permitted to testify that because of the proximity to the airport, the bulk of appellee's remaining property would no longer be suitable for residential purposes which was its highest and best use. The jury returned a verdict of $267,000 for the 127 acres taken and $968,400 as damages to the remainder.
The county raises two primary points, but the only one which we believe to have merit is whether the court erred in allowing the jury to consider evidence showing a decrease in the value of the appellee's remainder caused by the use to which the property taken from other landowners will be put.
When a portion of a landowner's property is acquired by eminent domain, he is entitled to be paid not only for the land taken but also for damages suffered by the remainder. 4A P. Nichols, The Law of Eminent Domain § 14.02 (rev. 3d ed. P. Rohan 1981). In Florida, the right to severance damages is now guaranteed by section 73.071(3)(b), Florida Statutes (1979). Often, the damage to the remaining land occurs because it has been reduced by the taking to a smaller size or even cut in two. Sometimes the depreciation occurs because of the condemnor's intended use of the taken property. We are presently concerned with the latter aspect of damages.
In the case of a partial taking, a landowner is generally entitled only to such damages to the remainder as are attributable to the use or activity on the land which is taken and is not entitled to such consequential damages from activity occurring on land which is taken from others. Annot., 59 A.L.R.3d 488, 499 (1974). The most prominent authority for this rule is Campbell v. United States, 266 U.S. 368, 45 S.Ct. 115, 69 L.Ed. 328 (1924), in which the government took a portion of the landowner's property for use in the construction of a nitrate plant. However, the actual plant was to be built on property taken from other landowners. In rejecting the landowners' claim for damages to the remainder caused by the proposed nitrate plant, the court said:
The rule supported by better reason and the weight of authority is that the just compensation assured by the 5th Amendment to an owner, a part of whose land is taken for public use, does not include the diminution in value of the remainder, caused by the acquisition and use of adjoining lands of others for the same undertaking.
266 U.S. at 372, 45 S.Ct. at 117 (citations omitted).
However, the rule is often subject to an exception which authorizes an award for damages to the remainder where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put. Annot., 59 A.L.R.3d 488, 501 (1974). A good example of the application of the exception *270 is found in cases in which the landowner is permitted to recover for the damages to the remainder of his property caused when the condemned land is to be used as part of the construction of a highway. E.g., Andrews v. Cox, 129 Conn. 475, 29 A.2d 587 (1942). These cases are grounded on the premise that it is impossible to separate the damages caused by the small portion of the highway built upon the taken land from the damages caused by the highway as a whole. But see Kentucky Department of Highways v. Williams, 487 S.W.2d 290 (Ky. Ct. App. 1972).
A leading case involving the taking of property for use as an airport is Boyd v. United States, 222 F.2d 493 (8th Cir.1955). In Boyd the government condemned fifteen acres of an eighty-two acre farm which was to be located at the northern tip of the airport complex. In rejecting the landowners' claim that they were erroneously denied the opportunity to prove that their remainder had been damaged by the fact that the taken property was to be used for airport purposes, the court said:
But a landowner's right to compensation for such a depreciating injury to his remainder has relation only to the affecting use that may be made of the taken part of his own tract and "does not include the diminution in value of the remainder caused by the acquisition and use of adjoining lands of others for the same undertaking." Campbell v. United States, 266 U.S. 368, 372, 45 S.Ct. 115, 117, 69 L.Ed. 328.
Appellants therefore could not claim a right to prove or recover for any diminution in value which might be occasioned to their remainder by the fact that it was being made to adjoin an air base generally, of which their 15.7 taken-acres were to constitute merely some slight, incidental or abstract segment  for example, a vacant border area  having no specifically demonstrative and directly affective utilization or function. Any depreciating injury which would exist to their remainder in such a situation would have to be regarded legally as being simply a consequence from the air base generally and as not being provably a product of their 15.7 taken-acres. And in respect to such a general, depreciating injury only, appellants would, of course, be in no different position of damage than their neighbors, whose farms the air base also adjoined, although none of their land had been appropriated for inclusion therein.
222 F.2d at 494-95.
In United States v. Kooperman, 263 F.2d 331 (2d Cir.1959), the government condemned property for the construction of an ammunition storage facility. No portion of the actual facility was to be constructed upon the property taken from Ms. Kooperman; it was to be used as a "buffer and safety zone" around the facility. The court of appeals affirmed the denial of consequential damages to the remainder of Ms. Kooperman's property.
The power company had condemned a small piece of the landowner's property in order to run a transmission line across it in Public Service Electric & Gas Co. v. Oldwick Farms, Inc., 125 N.J. Super. 31, 308 A.2d 362 (1973). On appeal from an award of severance damages, the Supreme Court of New Jersey posed the issue and stated the general principle as follows:
With respect to the primary issue raised on this appeal  whether a condemnee, part of whose property has been taken, is entitled to compensation for damage to the remainder of his land where such damage is attributable to the effect of the total improvement constructed by the condemnor, including portions on adjoining lands acquired by others  the general rule is said to be that where it is possible to separate the element of damage to remaining lands due to use of the land taken from the owner, from the damage thereto flowing from the use of lands taken from others for the same project, the measure of damage is limited to that caused by use of the land taken from the owner. See 4A Nichols, Law of Eminent Domain, § 14.21(1) at 14-53.
*271 125 N.J. Super. at 35, 308 A.2d at 364. The court observed that the consequential damages were not caused by the use to which the property taken from the landowner would be put but, rather, by the lines and towers located on adjoining property that lessened the residential value of the entire area. The landowner argued that the transmission line that crossed his property was an "integral and inseparable part of a single use to which the land taken and other adjoining land is put," so that he was entitled to consequential damages by virtue of the exception to the general rule. In rejecting the landowner's argument and reversing the award of severance damages, the court held:
While it is apparent that the transmission lines which transverse defendant's property are physically an "integral and inseparable part" of the total project, we do not find that that fact requires a departure from the rule enunciated in Campbell v. United States, above.
In this respect the cases upon which Oldwick relies appear to be clearly distinguishable. In those cases, unlike here, the damage to the remaining lands resulting from the taking of a portion of the tract were inseparable from the damages to the remaining land attributable to the whole improvement. Since it is here practicable to separate the use of the land taken from that of the adjoining land, defendant is entitled to compensation only for the land taken and the use to which it will be put, and not for the use which will be made of the adjoining lands.
125 N.J. Super. at 38, 308 A.2d at 365.
Florida law on the subject is scarce. Our court recognized both the general rule and the exception in City of Tampa v. Texas Co., 107 So.2d 216 (Fla. 2d DCA 1958), but made no definitive application to the facts. In State Department of Transportation v. West Palm Beach Garden Club, 352 So.2d 1177 (Fla. 4th DCA 1977), the court denied severance damages predicated upon highway noise when a 150-foot strip of land off the edge of a city park was condemned for use as an interstate highway. The court held that the damage to the park was no different in kind from that suffered by anyone else similarly situated. Because it would seem to be impossible to separate the damages caused to the remainder of the park by the use of the taken property from the damages caused by the similar use of adjoining land, the court appeared to align itself with the minority of jurisdictions which fail to recognize an exception to the general rule. E.g., State Highway Commission v. Chatham, 173 Miss. 427, 161 So. 674 (1935). However, the holding in that case must be tempered by the fact that the decision was clearly influenced by considerations of estoppel against the city of West Palm Beach. Finally, we note that the holding in State Department of Transportation v. Capital Plaza, Inc., 397 So.2d 682 (Fla. 1981), was consistent with the application of the general rule, but the court made no mention of it. There a service station owner unsuccessfully sought severance damages for a partial taking to widen a highway on the theory that the erection of a median as part of the highway project reduced the traffic flow into his business. The court reasoned that because the median had been erected on land already owned by the DOT, the damage had not resulted directly from the taking.
We accept the general rule and its concomitant exception as an appropriate standard to measure severance damages when the diminution of value to the remainder is caused by the taking or use of the land of others for the same undertaking. As for the present case, we are convinced that the facts fall within the scope of the general rule rather than its exception. While the value of its entire property may have been greatly reduced by virtue of the construction of the nearby airport, the appellee could make no claim for severance damages if the county had not chosen to condemn any of its property. Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956). Yet, the appellee will be in no different position as a result of the taking of its 127 acres because this land will be left in its natural state as a buffer zone. The taken *272 property will not be utilized in any manner for the operation of the airport. Hence, it was error for the court to permit the appellee's appraisers to predicate their opinions upon consequential damages caused to the remainder by the proximity to the airport.
We find unpersuasive appellee's argument that the taken land is an essential part of the airport project because airplanes will periodically occupy the air space above it. As the court stated in Boyd v. United States:
The fact that runways, located on other land taken, were so directioned that planes would take off or come in over appellants' remainder would not make their 15.7 taken-acres constitute a direct and identifiable element of depreciation merely because it was an abstract part of the general airbase area.
222 F.2d at 496. Unlike the runway or the operations center or even the storage areas, the undisturbed buffer zone is not an integral and inseparable part of the airport facility. It simply serves to insulate the airport from the surrounding land. If the appellee is ever deprived of the beneficial use of some of its remaining property due to overflights, it will be entitled to make a claim for inverse condemnation. Again, the court in Boyd v. United States made this clear:
It must be remembered in this connection that any subsequent operation of the field in such a manner as to cause appellants' remainder to be subjected to flights of aircraft over it, so low and frequent as to constitute a direct and immediate interference with their enjoyment and use thereof, would itself give rise to a wholly independent right of compensation for the appropriation of an easement as to the remainder. See United States v. Causby, 328 U.S. 256, 66 S.Ct. 1062, 90 L.Ed. 206 [1206]. The present condemnation does not cover any such possible, subsequent and additional taking.
222 F.2d at 496. Moreover, the appellee may be entitled to additional compensation if the county ever departs from the proposed plan and endeavors to use the taken land for purposes other than a buffer zone. State Department of Transportation v. Decker, 408 So.2d 1056 (Fla. 2d DCA 1981).
We reverse the judgment to the extent of the award of severance damages and remand the case for a new trial on this issue. Since the award of attorney's fees was predicated in part upon the successful prosecution of the claim for severance damages, we also reverse the judgment of attorney's fees and remand for the setting of a new fee. Otherwise, the judgment is affirmed.
OTT and RYDER, JJ., concur.