906 So.2d 1161 (2005)
DEPARTMENT OF TRANSPORTATION, Appellant,
v.
RFT PARTNERSHIP, Appellee.
No. 2D04-788.
District Court of Appeal of Florida, Second District.
June 29, 2005.
*1163 Pamela S. Leslie, General Counsel, and Marianne A. Trussell, Deputy General Counsel, Department of Transportation, Tallahassee, for Appellant.
Jack P. Brandon and Deborah A. Ruster of Peterson & Myers, P.A., Lake Wales, for Appellee.
ALTENBERND, Chief Judge.
The Department of Transportation (DOT) appeals a final judgment awarding attorneys' fees for a nonmonetary benefit in an eminent domain proceeding. We reverse. This case is procedurally unusual. We decline to resolve the procedural issues because we conclude that the benefit obtained by the lawyers for their client was not the type of nonmonetary benefit for which the DOT is required to pay attorneys' fees.

I. THE FACTS
RFT Partnership (RFT) is a real estate development firm. It often buys land to hold in reserve for development purposes. Prior to 1996, RFT purchased a parcel, identified for purposes of this lawsuit as Parcel 160, at the Memorial Boulevard exit of I-4 in Lakeland. Parcel 160 was approximately sixteen acres and zoned for industrial use. Although it was adjacent to I-4 and Memorial Boulevard, access to Parcel 160 in 1996 was available only from Laura Road, a small unimproved road that intersected with Galloway Road about a quarter mile south of Parcel 160. Galloway Road ran immediately adjacent to the western edge of Parcel 160 and crossed I-4 by means of an overpass. The diagram attached to this opinion as Appendix "A" will assist in understanding the layout of this property.
By 1996, the DOT had decided to expand I-4 in a region including the Memorial Boulevard exit. To accomplish this expansion, the DOT determined that it needed to take a slice of approximately 41,000 square feet from Parcel 160. This slice is the shaded portion of the property in the diagram.
In order to take this parcel and other parcels necessary for the project, the DOT filed case number GC-G-3140 in the circuit court of Polk County. RFT hired the Peterson & Myers law firm to represent it in this matter. In August 1997, after considerable legal proceedings, the DOT decided to abandon or delay its efforts to *1164 take this parcel. The DOT filed a notice of dismissal, and the lawyers for RFT requested attorneys' fees for defeating the proceeding. The trial court entered an order on fees and costs, granting the Peterson & Myers law firm a fee of $27,500. That order was entered on January 2, 1998. Apparently, the DOT paid this award of fees.
The dispute over attorneys' fees, however, included an issue that was not resolved by the order in January 1998. During the eminent domain proceeding, it became clear that the DOT intended to elevate Galloway Road in order to allow for a higher overpass at I-4. This change of grade would affect Galloway Road south at least as far as its intersection with Laura Road. If the project had been built as initially designed by the DOT, the intersection between Galloway Road and Laura Road would have been so steep that trucks could not have used the intersection if or when RFT developed the property as a warehouse facility.[1] Expert testimony indicated that the present value of the property would have decreased substantially if the intersection at Galloway Road and Laura Road could not accommodate trucks in the future.
Peterson & Myers hired traffic engineers to examine this problem and engaged in discussions with the DOT, detailing alternative development plans that could potentially mitigate the grade change at the intersection of Galloway Road and Laura Road. Despite the DOT's initial receptiveness to the proposed plans, negotiations fell apart and, before the action was dismissed, the DOT never formally agreed to make the suggested changes at this intersection.
At the hearing in January 1998, the trial court declined to award fees for what could be classified as a design benefit based on the alternative development plans because no taking had occurred and any benefit was hypothetical. The trial court did, however, expressly leave the issue open. The order stated:
FURTHER, the Court reserves jurisdiction to consider an award of attorneys' fees premised upon non-monetary benefits in the event the [DOT] should refile this case naming RFT Partnership as a party defendant.
The DOT did not appeal this unusual ruling.
In 2002, the DOT filed a new case naming RFT as a party, seeking the same parcel of land it sought in 1996. The DOT acquired the parcel from RFT through an administrative settlement, without the assistance of RFT's attorneys. This second case was case number 02CA-837. We do not have the records from this second case in the appellate record, but apparently it was resolved before the end of 2002.
At some point between January 1998 and the filing of the new case in 2002, the DOT implemented the proposed changes at the intersection of Galloway Road and Laura Road. The engineer hired by Peterson & Myers informed the law firm that the DOT had implemented these proposed changes. As a result, when Peterson & Myers discovered that the second lawsuit had been filed and resolved, it believed that it was entitled to the attorneys' fees that had been left unresolved in January 1998. Thus, in July 2003, the law firm filed a motion to tax fees in case GC-G-96-3140.[2]
*1165 The DOT responded to the motion, arguing that the trial court should strike the motion. The DOT maintained that the trial court lacked jurisdiction to hear the motion because the indefinite reservation of the issue of fees was a nullity, that the motion was untimely under Florida Rule of Civil Procedure 1.525, and that fees were not appropriate. The trial court rejected the arguments of the DOT and awarded the law firm an additional $217,000 in attorneys' fees. These fees were calculated based on the theory that the law firm had avoided $900,000 in severance damages by causing the redesign to the intersection.[3] The court determined that it was appropriate to award this fee for the achieved nonmonetary benefit.

II. THE PROCEDURAL ISSUES
The DOT argues that the trial court erred in awarding fees because RFT failed to file a timely motion for fees under Florida Rule of Civil Procedure 1.525 and because the reservation of jurisdiction in the 1998 judgment was a nullity. We comment briefly on these issues, but have no need to resolve them because the case can be resolved by a determination that the Peterson & Myers law firm is not entitled to fees.
As to the argument that the motion for fees was untimely under rule 1.525, we note that the final judgment in this case was entered in 1998, two years before rule 1.525 became effective. Thus, if the thirty-day period described in rule 1.525 were measured from that judgment, it would have expired prior to the effective date of the rule.
Rule 1.525 was effective when the DOT filed the second action in 2002. The DOT, however, neglected to give the Peterson & Myers law firm notice of that lawsuit, and RFT did not retain them. Thus, neither the trial court nor the Peterson & Myers law firm had notice that the attorneys' fees dispute left unresolved in the first action was now ripe for resolution.
As to the argument that the trial court's reservation of jurisdiction was a nullity, the DOT relies on cases in other legal contexts, such as Mishoe v. Mishoe, 591 So.2d 1100 (Fla. 1st DCA 1992). It is certainly unusual for a trial court to reserve an issue for a possible determination at an indefinite time in the future. It might have been better for the trial court to have entered an order refusing to resolve the issue and explaining that its ruling was without prejudice to the issue being litigated in any future action to take the property. On the other hand, the DOT objected to the judgment in the trial court but did not appeal the issue to this court. Its failure to notify the Peterson & Myers law firm of the filing of the second lawsuit precluded the resolution of the issue in that case.
Without regard to the trial court's jurisdiction, it entered a final order that was timely appealed to this court. We have jurisdiction to review that order and conclude that the matter is better resolved on the primary legal issue.

III. NONMONETARY BENEFITS AS A BASIS FOR ATTORNEYS' FEES
Section 73.092(1)(b), Florida Statutes (1995),[4] states that when determining the amount of attorneys' fees awarded in an eminent domain proceeding,

*1166 [t]he court may also consider nonmonetary benefits obtained for the client through the efforts of the attorney, to the extent such nonmonetary benefits are specifically identified by the court and can, within a reasonable degree of certainty, be quantified.
This statute is relatively new. The concept of fees for "nonmonetary benefits" first appeared in this statute in 1990. See ch. 90-136, Laws of Fla. Prior to 1990, attorneys' fees in eminent domain proceedings were set utilizing a different and more generous set of factors. In 1994, the statute was amended to establish a policy of setting fees "solely on the benefits achieved for the client." Ch. 94-162, Laws of Fla.; § 73.092(1). This benefit approach is based primarily on the monetary difference between the condemning authority's written offer and the amount of the final judgment or settlement. The statute, however, recognizes that benefits can be achieved that are not payable in dollars, especially in the case of a settlement. The court is entitled to award fees based on a percentage of the value of the nonmonetary benefit. Also added in 1994 is the requirement that the nonmonetary benefit be specifically identified by the court and quantified within a reasonable degree of certainty. See § 73.092(2)(b).
In this case, there can be little question that the lawyers "helped" their client and performed a valuable service for RFT. The harder question is whether this help was a "benefit" "in eminent domain proceedings." § 73.092(1). There has been little case law explaining what kinds of nonmonetary benefits can result in fees under this statute.[5] It is fair to suggest that the courts have not yet developed a good set of factors to use in deciding whether the efforts of the landowner's attorneys have resulted in a compensable nonmonetary benefit. This case demonstrates at least two factors that may be useful in many cases. We emphasize that while these factors may be useful, we are not holding that they are necessarily exclusive or essential.
First, it seems clear that a nonmonetary benefit achieved by the landowner's attorneys warrants an award of attorneys' fees if the nonmonetary benefit is provided by the condemning authority as part of the settlement in the eminent domain proceeding. For example, if the DOT owned other property that it could *1167 swap in exchange for the condemned property, the fact that the landowner received property in exchange for the taking would be a nonmonetary benefit that could be accurately quantified.
The cases to date suggest that nonmonetary benefits that are part of a settlement package are more common when the condemning authority takes a portion of the landowner's property. Even in a case where severance damages could not be proven, if the DOT agreed as part of the settlement to build a privacy fence along the property line between the taken property and the landowner's remaining property, the fence would be a nonmonetary benefit. The same would probably be true if the DOT agreed to provide better access or drainage for the landowner's remaining property. So long as the DOT agrees to provide such improvements as part of a settlement, it would not seem that the improvements would need to be related to the property taken. They are simply a payment in kind to settle the case, as compared to a payment in cash.
Second, it seems clear that a nonmonetary benefit achieved by the landowner's attorneys warrants an award of attorneys' fees, even if it is not part of the settlement, if it has the effect of benefitting both the landowner and the condemning authority by reducing the compensation otherwise payable by the condemning authority. Thus, in Department of Transportation v. CNL Income Fund VIII, Ltd., 823 So.2d 147 (Fla. 5th DCA 2002), the landowner's attorneys obtained a variance that had the effect of reducing severance damages. Because the variance benefitted the landowner and the condemning authority, it was a proper subject for an award of attorneys' fees. In such a case, the landowner's attorneys are essentially receiving a contingency fee from the condemning authority for work justifiably related to the eminent domain proceeding that resulted in a monetary benefit for the condemning authority.
In CNL Income Fund, the court suggested that a test for nonmonetary benefits should be whether the "work of the owner's attorney in obtaining the [nonmonetary benefit] relates directly to the issues in the eminent domain case." Id. at 149. This test is probably a little unpredictable and incomplete, but it is helpful. It is not enough that the work relate to issues concerning the overall project being proposed by the condemning authority. Although the client might derive some benefit from the work of its attorneys in performing a thorough review of a DOT road project, including recommendations for changes in a road project in the general vicinity of the client's project, such work would seem to relate to the issues of the eminent domain proceeding only if it served to alter the client's compensable damages.
In this case, there is no evidence or even an argument that RFT settled with the DOT in 2002 for a payment that included both money and improvements to the intersection. Thus, the improvements to the intersection are not a part of the bargain with the DOT and cannot be considered a nonmonetary benefit under our first factor regarding settlements that include in-kind payments.
Considering the second factor, the attorneys' work on the design of the intersection of Galloway Road and Laura Road would be of benefit only to the issues within the eminent domain proceeding if that work reduced the compensation payable to RFT in the second eminent domain proceeding. Thus, we agree with the trial court's analysis that the redesign of the intersection in this case could only qualify as a nonmonetary benefit if it minimized or avoided severance damages or other eminent domain compensation payable by the DOT to RFT. It is not enough that the *1168 redesign occurred because the DOT was trying to avoid controversy, be a good member of the neighborhood, or simply build better roads.[6] Our disagreement with the trial court is with its conclusion that the condition of this intersection could be a source of severance damages for RFT.

IV. CONDITIONS AT THE INTERSECTION WOULD NOT CREATE COMPENSABLE DAMAGES IN EMINENT DOMAIN AS SEVERANCE DAMAGES
"In the case of a partial taking, a landowner is generally entitled only to such damages to the remainder as are attributable to the use or activity on the land which is taken and is not entitled to such consequential damages from activity occurring on land which is taken from others." Lee County v. Exch. Nat'l Bank of Tampa, 417 So.2d 268, 269 (Fla. 2d DCA 1982). Under this general rule, there is no question that the intersection of Laura Road and Galloway Road is not on the land taken from RFT and activity at that intersection cannot support severance damages.
In Florida, we recognize a modest exception or expansion of this rule so that damages from an activity are recoverable "where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put." Exch. Nat'l Bank, 417 So.2d at 269. Thus, if the land taken is used as right-of-way for a highway that is also constructed on other adjoining land, severance damages can be based upon the overall impact of the highway and not merely the construction on the land taken. However, a taking will not fall within this exception, and severance damages are not proper if it is practicable to separate the use of the land taken from that of the adjoining land. Id. at 271 (citing Pub. Serv. Elec. & Gas Co. v. Oldwick Farms, Inc., 125 N.J.Super. 31, 308 A.2d 362, 364-65 (1973)).
RFT is not arguing about severance damages arising from increased traffic on either Galloway Road or Interstate 4. This issue involves an isolated change in an intersection on property that the DOT already owned before these proceedings commenced. Thus, the land taken from RFT does not fit within the exception described in the Exchange National Bank case. As described above, any decrease in value to the property of RFT that might have resulted from a change in grade at the intersection is clearly caused by design issues independent of the small slice of property taken from RFT.[7] Under the ruling in Division of Administration v. Capital Plaza, Inc., 397 So.2d 682 (Fla.1981), severance damages are not available for such a change. Because the conditions at the intersection would not support severance damages, the attorneys' success in improving those conditions simply had no relevance to severance issues addressed in the eminent domain proceeding. Thus, the lawyers cannot support an award of fees based on a theory that they achieved a nonmonetary benefit related to an issue of severance damages.

*1169 V. THE CONDITIONS AT THE INTERSECTION WOULD NOT QUALIFY FOR LIMITATION OF ACCESS DAMAGES
RFT did not file any counterclaim in the initial action alleging that the change in grade at the intersection would constitute inverse condemnation by restricting access to its property. By the time of the second eminent domain proceeding, the issue apparently had been resolved and had become moot. In light of the odd procedural posture of this case, however, we have considered whether the possibility of an inverse condemnation claim might have been enough to justify attorneys' fees for this work. We conclude that it is not.
There are occasions when a landowner is entitled to seek damages for a limitation of access to property even if the DOT takes no property from the landowner. See Palm Beach County v. Tessler, 538 So.2d 846 (Fla.1989). These occasions, however, require proof of a substantial loss of access at the time of the alteration in the road. See, e.g., Tessler, 538 So.2d at 849. If RFT had already had an existing warehouse on its property and the DOT had decided to alter the intersection to prevent complete access to the property by large trucks, it is quite possible that RFT could have proven a case under Tessler.
The facts in this case establish that Laura Road was merely a small, unimproved lane connecting pastureland to Galloway Road. The fact that the owners of Parcel 160 hoped someday to develop their land as a warehouse facility did not require the DOT to maintain current road conditions to allow for such a future use. If and when RFT develops this property, it will obviously need to resolve road conditions on Laura Road. It was certainly considerate of the DOT to alter the construction of this intersection to minimize the future costs of developing Parcel 160. However, the DOT had no legal obligation to perform this work, and it was not an alteration that could have been compelled by the filing of a claim for inverse condemnation. Peterson & Myers was not entitled to receive attorneys' fees from the DOT on this basis. If fees were awardable in such a situation, every time the DOT cooperated with landowners and voluntarily made alterations in projects suggested by the landowners' attorney, it would be faced with the possibility of paying attorneys' fees, even though it had no legal obligation to make the changes. This cannot possibly be the policy that the legislature intended when it enacted this statute.
Accordingly, we reverse and remand with instructions to vacate the order awarding attorneys' fees and to enter an order denying those fees.
Reversed and remanded.
STRINGER and VILLANTI, JJ., Concur.

*1170 APPENDIX "A"

NOTES
[1] If this property is ever developed for use as a warehouse facility, it is apparent that Laura Road, as an unimproved road, will not be adequate for the new use and that the road will need to be substantially improved.
[2] The motion was filed on behalf of the client, RFT, but the real party in interest would appear to be the Peterson & Myers law firm.
[3] We are not called upon to determine whether the attorneys' fees, if appropriate, would be based on a measure of the change in value of the property or the presumably smaller cost to correct the change in grade at the intersection.
[4] The language of section 73.092 has not been substantially amended since 1995.
[5] The case law can be divided into two categories. First are cases that discuss the nature of or the eligibility for nonmonetary benefit attorneys' fees. See Ward v. Collier County, 852 So.2d 892 (Fla. 2d DCA 2003); State, Dep't of Transp. v. Patel, 768 So.2d 1173 (Fla. 2d DCA 2000) (holding that saving the remainder of the landowner's property by defeating a whole taking did not constitute a nonmonetary benefit); Dep't of Transp. v. CNL Income Fund VIII, Ltd., 823 So.2d 147 (Fla. 5th DCA 2002) (holding that variance that reduced the fair market compensation owed to the property owner was a compensable nonmonetary benefit); Amerada Hess Corp. v. State, Dep't of Transp., 788 So.2d 276 (Fla. 4th DCA 2000) (holding that nonmonetary benefit attorneys' fees were not appropriate where changes in the DOT's plans would have been made even without efforts of landowner's attorneys); State, Dep't of Transp. v. Skidmore, 720 So.2d 1125 (Fla. 4th DCA 1998); Fla. Inland Navigation Dist. v. Humphrys, 616 So.2d 494 (Fla. 5th DCA 1993).

Second are cases that merely mention the concept of nonmonetary benefit attorneys' fees. See Golf Course Resorts, Inc. v. Dep't of Transp., 816 So.2d 236 (Fla. 2d DCA 2002); State, Dep't of Transp. v. Smithbilt Indus., 715 So.2d 963 (Fla. 2d DCA 1998); Amoco Oil Co. v. State, Dep't of Transp., 765 So.2d 111 (Fla. 1st DCA 2000); Reese v. State, Dep't of Transp., 743 So.2d 1227 (Fla. 4th DCA 1999); Dep't of Transp., State of Fla. v. Robbins & Robbins, Inc., 700 So.2d 782 (Fla. 5th DCA 1997); Seminole County v. Clayton, 665 So.2d 363 (Fla. 5th DCA 1995); State, Dep't of Transp. v. Beta Developers, 554 So.2d 555 (Fla. 1st DCA 1989).
[6] We assume, for purposes of our analysis, that the DOT undertook this change because of the efforts and persuasion of the Peterson & Myers law firm.
[7] Two older cases consider the exception described in Exchange National Bank to reach outcomes that do not support RFT's claim for attorneys' fees. See Jacksonville Expressway Auth. v. Milford, 115 So.2d 778 (Fla. 1st DCA 1959) (holding that damages are not allowable to a property owner for a change in grade in a street in which the public holds an existing easement for street purposes and that a condemnation of property abutting the preexisting right-of-way would not change the rule); see also City of Tampa v. Texas Co., 107 So.2d 216 (Fla. 2d DCA 1958).