STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-
PORTATION, PLAINTIFF-RESPONDENT, v. CLARA
ROSENBLUM, ET AL., DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued February 7, 1985—Decided April 10, 1985.

212

Before Judges MATTHEWS, FURMAN and HAVEY.

*Peter H. Wegener* argued the cause for appellants (*Bathgate, Wegener, Wouters & Neumann,* attorneys; *Kevin C. Gleason,* on the brief).

*Masha D. Rozman,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Patricia D. Connelly,* Deputy Attorney General, on the brief).

The opinion of the court was delivered by

MATTHEWS, P.J.A.D.

Defendants are the owners of land, a portion of which was taken by eminent domain by the Commissioner of Transportation as part of a highway widening project. Prior to the taking, defendants' property consisted of a 30 acre parcel located on the corner of Route 9 and Sunnyside Road in Howell Township, Monmouth County. The land, high along Sunnyside Road, dropped off in a southerly direction until it reached its lowest point. A 16″ pipe traversed Route 9 and carried water from the east or upland side of the highway, which was owned by the State, to the low-lying subject property on the west side of Route 9. A ditch, located across the property's frontage,

allowed water to flow in a southerly direction to the low point on the property's frontage and eventually to flow in a southwesterly direction into a creek. The property was subject to an easement granted to the State in 1927 by defendants' predecessor in title.

The State acquired a .657 acre L-shaped piece of property from the defendants in fee simple absolute. The purpose of this acquisition was for the widening of Sunnyside Road and the dualization of Route 9; the taking to provide the area for the southbound lanes of Route 9. The State also acquired an easement for the maintenance of slopes. The highway is being raised approximately two feet. The slope easement will accommodate the change in grade from the highway to the property. Finally, the State is upgrading its drainage system, acquiring a drainage easement area for the construction and maintenance of a box culvert and a pipe.

The ditch which prior to the taking was located across the property's frontage will be filled in and made a part of the highway, and the water will be piped under the road to the new drainage easement area. At the location of the new easement area, there will be a 48″ pipe constructed. This pipe will carry water from the east side of the highway to the subject property on the west side of Route 9. The existing 16″ pipe will be plugged. The new pipe will be located at the property's lowest point, about 240 feet south of the existing pipe.

Condemnation commissioners awarded $19,600 for the property taken to defendants, who thereafter appealed to the Law Division. The case was tried to a jury on the sole issue of the amount of compensation to be awarded defendants. The jury awarded defendants $27,500 in damages. Defendants, subsequently, filed a motion for a new trial or, alternatively, for *additur*. When the trial judge denied both aspects of the motion, defendants appealed to this court.

Defendants contend that the trial judge erred in instructing the jury "not to award compensation for damages resulting

from the [State's] deposit of drainage water on the remainder portion of ... [defendants'] tract" unless the jury first found that the State "had been unreasonable in directing the flow [of surface drainage water] over the Defendants' remaining lands." We disagree. The jury charge, when read as a whole, was accurate and proper. *See State v. Wilbely,* 63 *N.J.* 420, 422 (1973).

■■ The State Highway Commissioner is empowered by *N.J.S.A.* 27:7–22 to acquire "lands or rights therein whether for immediate or future use by gift, devise or purchase, or by condemnation in the manner provided in chapter 1" of the Eminent Domain Act. When the State takes private property for a public purpose under the provisions of the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–22 *et seq.,* "the property owner is entitled to just compensation." *State v. Silver,* 92 *N.J.* 507, 513 (1983). *See N.J. Const.* (1947), Art. I, § 20. This includes just compensation for the property taken and damages to any remaining property:

> The condemnee shall be entitled to compensation for the property, and damages, if any, to any remaining property, together with such additional compensation as provided for herein, or as may be fixed according to law. [*N.J.S.A.* 20:3–29]

To be compensated, however, damages to the remaining property must proximately result from the portion of original tract condemned, rather than from the State's use of other land or from another person's use of his land. *P.S.E. & G. v. Oldwick Farms,* 125 *N.J.Super.* 31, 35 (App.Div.1973), certif. den. 64 *N.J.* 153 (1973); *State Comm'r of Transp. v. Cooper Alloy Corp.,* 136 *N.J.Super.* 560, 568 (App.Div.1975).

The success or failure of defendant's action, therefore, depends upon whether the alleged damage to their remaining property was caused by the condemned land or some other property.

Under pre-1956 common law, the owner of lowland property was required to permit any surface water from the higher land of his neighbors to flow over his land. *Yonadi v. Homestead*

*Country Homes*, 35 *N.J.Super.* 514, 521 (App.Div.1955). Our Supreme Court modified this rule in *Armstrong v. Francis Corp.*, 20 *N.J.* 320 (1956), requiring that each owner's use of land and discharge of surface water therefrom be reasonable. The reasonable use doctrine set forth in *Armstrong* provides:

> that each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable. [20 *N.J.* at 327; citations omitted]

Justice Brennan, speaking for the *Armstrong* Court, further stated:

> The rule of reasonableness has the particular virtue of flexibility. The issue of reasonableness or unreasonableness becomes a question of fact to be determined in each case upon a consideration of all the relevant circumstances including such factors as the amount of harm caused, the foreseeability of the harm which results, the purpose or motive with which the possessor acted, and all other relevant matter, .... [20 *N.J.* at 330; citations omitted]

■ If the resultant damages are caused by the taken land, defendants are entitled to be compensated for those damages because landowners have constitutional protection that their land will not be taken without just compensation. *See N.J. Const.* (1947), Art. I, § 20. The "reasonable use" doctrine would be inapplicable to this determination because the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–1, *et seq.*, entitles the property owner to receive just compensation for damages to his remaining property. The purpose of the act would, therefore, be frustrated if the State were not required to compensate property owners in situations where it reasonably used the land taken. If such were the case, the State would never be required to compensate property owners for the damages sustained by their property after a partial taking. The use to which the State puts condemned land would undoubtedly always be deemed reasonable.

■■ Defendants were therefore, only entitled to recover for (1) the damages which were caused by the State's unreasonable use of their upland property on the east side of Route 9 and/or (2) the damages which were caused by the condemned

land. This is precisely the way in which the trial judge charged the jury:

> You may award damages if you believe that damages due to drainage claimed by the owner are caused by the State's use of the property interest taken.... [T]he yellow and red that are on some of these maps.

The "yellow and red" which the judge refers to, represent the property condemned by the State. The judge further instructed the jury:

> An owner of upland property is allowed to take reasonable steps to drain his land of surface water, I point out that the State of New Jersey is an owner of upland property, that's property they have on the other side of Route 9.... [P]roperty owners must accept such water, without payment of compensation.
>
> Here the State of New Jersey is an upland owner and is entitled to take reasonable steps to drain its land. If you feel that the State made reasonable use of its property [in] draining the land you may not award damages to the property owner, if you believe that the State had to [*sic*] unreasonably in the use of the property that they have acquired, you may award damages to the owners.

Applying the law as instructed, the jury awarded defendants an amount we conclude to be both proper and just.

■ The application of the "reasonable use" doctrine to this case does not permit the conclusion that the State acted unreasonably in constructing the new drainage system. The system follows the natural course of water in the area and does not involve the diverting of water from its natural course. The purpose of increasing the pipe size from 16″ to 48″ was to ensure that the highway does not act as a dam preventing water from flowing naturally from the upland to the low lying property. If the pipe size was not increased, as the upland property developed, there would be ponding on the upland side of the road before the water eventually reached its natural low point, defendants' property. The facts also disclose that the increase in the pipe size does not increase the amount of water which will flow through it. The water from the upland would reach the subject property whether it went through a 16″ pipe or a 48″ pipe. The State, therefore, acted reasonably in draining its land.

In a similar case, *Bd. of Ed. of Manasquan v. N.J. Dept. of Transp.*, 69 *N.J.* 92 (1976), our Supreme Court held that it would be unreasonable for the State *not* to increase the size of a drainage pipe which had become inadequate. In *Manasquan*, a 24″ drainage pipe located under a railroad track allowed water from a 735 acre upland watershed to pass under the tracks to the lowland property on the other side. The pipe was adequate when installed, but as the upland watershed developed, the pipe became unable to accommodate the increased volume of water, thereby causing hazardous upland flooding. The Court held that failure to increase the inadequate pipe size constituted an unreasonable method of dealing with surface water.

The State concedes that "[w]hile the increase in the size of the pipe will not increase the amount of water flowing onto the subject property, the increased pavement [area] for the highway will increase the amount of water since the highway is basically impervious." The State notes, however, that this "increase in the runoff will be small—only a 3½% increase." This is because the highway represents only 2.3 acres out of the total 120 acre watershed. Thus, most of the water which will flow on the subject property is that which will flow from the upland watershed, not from the highway itself. The facts further disclose that the increase in water caused by the widening in the taking area only, would be even smaller—.75%.

More importantly, each one of the State's three appraisers concluded that there were no damages due to any increase in the amount of water which would flow onto the remainder of the owner's property. They believed that the increase in the amount of water due to the increased highway runoff was not a difference which would result in a reduction in the value of the remaining land. The defendants' appraiser, on the other hand, stated that there were substantial damages to the remainder, due to the change in grade and to the discharge of water from the 48″ pipe. While he testified that he felt there were dam-

ages due to the 48″ pipe, he did not explain how he concluded that the property would be affected. There was no testimony that there would be flooding, ponding or erosion. In short, defendants failed to prove any damages resulting from the increased size of the drainage pipe.

Despite this apparent lack of proof of damages sustained by defendants' remaining property, the jury award was higher than any of the State's three appraisals. While the appraisals consisted of $11,100, $22,600 and $25,600, the jury awarded defendants $27,500. The jurors, therefore, in all probability, found compensable the only item of damage not considered by the State's appraisers—the increase in water contributed by the greater area of road pavement.

Affirmed.