476 So.2d 224 (1985)
DIVISION OF ADMINISTRATION, STATE OF FLORIDA DEPARTMENT OF TRANSPORTATION, Appellant,
v.
FRENCHMAN, INC., et al., Appellees.
Nos. 84-772, 84-1034.
District Court of Appeal of Florida, Fourth District.
August 7, 1985.
Rehearing Denied October 23, 1985.
*226 Alan E. DeSerio of Dept. of Transp., Tallahassee, for appellant.
Paul A. Turk, Jr., and Leigh E. Dunston of Gunster, Yoakley, Criser & Stewart, P.A., Palm Beach, for appellees.
GLICKSTEIN, Judge.
In a condemnation suit involving the State Department of Transportation's taking, in order to widen a highway, of a strip of land on the edge of a golf course belonging to Frenchman, Inc., the Palm Beach circuit court entered final judgment awarding $29,313 for the value of the land actually taken and $190,000 in severance damages  with interest on both sums from the date of the declaration of taking. The parties had agreed on the value of the land actually taken, and only the question of severance damages had been tried to a jury. The state timely appealed, raising the following issues:
I. WHETHER THE TRIAL COURT ERRED WHEN IT PERMITTED THE OWNERS' WITNESS TO TESTIFY TO A "COST TO CURE" WITHOUT HAVING FIRST ESTABLISHED THE EXISTENCE OF SEVERANCE DAMAGES AND THAT THE "COST TO CURE" AMOUNT WAS LESS THAN THE POTENTIAL SEVERANCE DAMAGE.
II. WHETHER THE TRIAL COURT ERRED WHEN IT ALLOWED THE OWNER TO BASE A CLAIM ON ITEMS OF DAMAGE WHICH WERE NON-COMPENSABLE.
III. WHETHER THE TRIAL COURT ERRED WHEN IT GRANTED THE OWNERS' MOTION TO STRIKE THE DEPARTMENT'S REPLY TO AFFIRMATIVE DEFENSES WHEREIN IT WAS ALLEGED THAT THE DAMAGES CLAIMED BY THE OWNER WERE CAUSED BY THE OWNERS' OWN ACTS OF NEGLIGENCE OR ILLEGAL USE OF THE AREA ACQUIRED.
IV. WHETHER THE TRIAL COURT ERRED WHEN IT AWARDED AN ATTORNEY FEE BASED UPON BENEFITS ACHIEVED WHICH ARE THE SUBJECT OF AN APPEAL.
The Florida Constitution states that "no private property shall be taken except for a public purpose and with full compensation therefor paid." Article X, Section 6(a). When the condemnation action is at issue, our eminent domain statute requires that a twelve-person jury determine solely the amount of compensation, section 73.071(1) & (3), Florida Statutes (1983). Compensation under the statute includes the value of the land being appropriated; and as well, where the action is for condemnation by the Division of Road Operations (or other specified governmental entity) of a right-of-way, and less than the entire property is being appropriated, compensated for damages to the remainder property, including damage to the owner's established business, provided the owner appropriately sets forth in its pleadings the nature and extent of such damages. § 73.071(3)(a) & (b).
Florida case law also recognizes that when less than the entire property is being appropriated, full compensation for the taking of private property by eminent domain includes both the value of the portion being appropriated and any damage to the remainder caused by the taking. City of Hollywood v. Jarkesy, 343 So.2d 886 (Fla. 4th DCA 1977). The damage to the remainder of the property is usually denominated "severance damages." The burden of proof of a claim for severance damages is on the condemnee. City of Fort Lauderdale v. Casino Realty, Inc., 313 So.2d 649 (Fla. 1975); County of Volusia v. *227 Niles, 445 So.2d 1043 (Fla. 5th DCA 1984); and Division of Administration, State of Florida Department of Transportation v. Saemann, 399 So.2d 359 (Fla. 4th DCA 1981).

I
The state contends that the trial court committed reversible error when, over the state's objection, it permitted the owners' appraisal witness to testify on the cost to cure damage, caused by the taking, to the remainder of the property, when the necessary predicate of showing the existence of severance damages had not been laid. The substance of the state's reasoning is as follows: The conventional measure of severance damages is the reduction in the value of the remainder property occasioned by the taking. Kendry v. Division of Administration, State Department of Transportation, 366 So.2d 391 (Fla. 1978). The usual manner of determining this reduction is by comparing the pre-condemnation and post-condemnation fair market values of the property. Evidence of the cost of cure of the damage to the remainder property is then admissible in order to mitigate the amount of the award: the condemnor is entitled to the adoption of the lesser criterion of damage. 5 Nichols on Eminent Domain § 23.2 (3d Ed. 1976). Thus, in Hill v. Marion County, 238 So.2d 163 (Fla. 1st DCA 1970), without ruling the above principle was the law in Florida, the court approved admission of evidence of the cost of cure "because there was evidence before the jury that the decrease in the market value of the property was greater than the loss under the `cost of cure approach'... ." Id. at 166. In Mulkey v. Division of Administration, State of Florida Department of Transportation, 448 So.2d 1062 (Fla. 2d DCA 1984), after noting that severance damages are measured by the reduction in value of the remainder property, the court stated that "the courts have recognized that this general measurement of damages may be replaced by a cost-to-cure approach in instances where such cost is less than the decreased value of the remainder." Id. at 1065.
We think this is a correct statement of the law of this state as in the majority of American jurisdictions. However, we do not say that the only way to lay the predicate for showing cost of cure is to use comparable sales information as the basis for providing testimony on the pre-condemnation and post-condemnation fair market value of the remainder property.
The fair market value of properties put to special uses is frequently difficult or impossible to ascertain from the market, as a market rarely is made for such properties. In such cases, if the value of the damage to the remainder of a property, a part of which is being appropriated to public use, could be determined only by comparison of fair market values, and cost of cure evidence could be admitted only after such evidence had been supplied, it would not be possible to satisfy the constitutional requirement that full compensation be paid when property is taken for public use.
The state points out that there are two recognized approaches to valuation of property, in addition to the comparable sales approach: the income or economic approach and the cost approach. McNays v. Claughton, 198 So.2d 366 (Fla. 3d DCA 1967). Here the owners' appraisal witness plausibly explained that he could not find usable comparable sales of golf courses, and the impact of the taking on income of the golf course could not be dependably determined until several years had elapsed. It further appears reasonable to suppose that if comparable sales of golf courses are rare, the possibility of estimating a golf course's income loss, because of a taking, by locating and examining the economic history of other golf courses similarly affected is even more remote. But the witness did not say why he failed to use the cost approach, and was unable to put a value on the damages to the remainder property resulting from the taking.
The cost approach to appraisal of real property is especially appropriate when the property contains relatively *228 unique or specialized improvements, and comparable properties are not on the market. J.E. Eaton, Real Estate Valuation Litigation 101 (19__). The object of the approach is to determine the cost of producing a substitute property with the same utility as the property being valuated. This is done by subtracting from the estimated replacement cost of the improvements then on the property the estimated depreciation that has occurred in the improvements, and adding the estimated value of the land. Id. Such appraisal of the remainder property can be made as it was before the taking and as a result of the taking. The difference between these figures  if any  is the reduction  or, conceivably, increase  in value of the property. Care must of course be taken not to include the value of the property taken when attempting to valuate damage to the remainder property. Also, it should be borne in mind that in this state benefits accruing to the remainder property's value when a public entity has condemned a right-of-way may offset severance damages, but may not offset the value of the land actually taken. § 73.071(4), Fla. Stat. (1983).
In the instant case, because Frenchman, Inc., did not first present evidence that it had sustained severance damages, it was error to admit testimony on the cost of cure.

II
The strip of land taken by the Department of Transportation is described as rough and buffer. It abuts three holes of the golf course. The strip, covered with brush and trees, had been previously used to obscure the highway from the golf course. The appraiser who presented testimony on the cost of curing purported damage to the remainder property arising from the taking of the right-of-way strip said that the prestige of the golf course had been lessened, and that its income would therefore suffer. Other items of damage which he addressed were increased visibility of highway traffic, noise, dust and exhaust fumes, and aesthetic diminution. He could not quantify the value of these damages.
At trial Frenchman, Inc., also put on the testimony of an architect who took part in the original designing of the golf course. The cure of which he spoke concerned mitigating traffic noise and sight intrusion to restore lost seclusion of the course. A drainage engineer, who had observed the golf course after a seven and one-half inch rainfall following the highway construction, but agreed he had not seen the golf course following a similar downpour prior to the construction, estimated it would cost $53,000 to correct the ponding problems he attributed to the taking and the construction that followed.
Florida law permits damages for such effects as traffic visibility and noise, fumes and dust, and aesthetic loss only when there has been a physical invasion or trespass amounting to a taking, such as to substantially oust the owner or deny it the beneficial use of the property. See Division of Administration, State of Florida Department of Transportation v. West Palm Beach Garden Club, 352 So.2d 1177 (Fla. 4th DCA 1977). As in Garden Club, this has not been shown to have occurred in the instant case. We note that, like Dreher Park in the authority cited, the seclusion of Frenchman's Creek golf course was already limited prior to the highway's widening. There was an unbuffered widened highway along another segment of its perimeter, and a railway just beyond the highway here involved. The golf course appears to have remained entirely playable after the taking and construction. A taking of part of a property that brings heavy traffic to the very walls of a church or a school located on the remainder of the same property may constitute a taking of the remainder or a portion thereof; a similar taking where a recreational facility occupies the property does not have the same legal effect. Thus, as in Garden Club, we do not find apropos the opinions in Dennison v. State, 265 N.Y.S.2d 671, 48 Misc.2d 778 (Ct.Cl. 1965), aff'd, 22 N.Y.2d 409, 293 N.Y.S.2d 68, 239 N.E.2d 708 (1968), or City *229 of Yonkers v. State, 40 N.Y.2d 408, 386 N.Y.S.2d 865, 353 N.E.2d 829 (1976), cases cited by Frenchman, Inc. The jury should not have been permitted to consider damages claimed for the increased effects of traffic visibility, noise, fumes and dust and a decline in aesthetics following the taking of the buffer area.
As to the purported cost of curing drainage problems, it was not adequately shown to what extent these problems were the result of the taking and the highway widening. Moreover, we must remind bench and bar that severance damage is that which is caused to the remainder by the taking and not that which is consequential from the manner in which the construction is performed. Weir v. Palm Beach County, 85 So.2d 865 (Fla. 1956). Where the construction is lawful and performed without negligence or misconduct, resulting injury is damnum absque injuria. Paty v. Town of Palm Beach, 158 Fla. 575, 29 So.2d 363 (1947). If the damages are occasioned by negligence or misconduct in performing the construction, a separate tort action or a legislative claims bill may be the appropriate avenue for redress. Division of Administration, State Department of Transportation v. Hillsboro Association, 286 So.2d 578 (Fla. 4th DCA 1973). In the instant case, to the extent the alleged drainage problem  if such can be adequately shown  is the result of the manner of construction rather than the taking, it should not be considered in determining severance damages. Common sense suggests that the taking as such could not cause any part of a drainage problem, but as we are not privy to all the facts and circumstances we decline to foreclose the contrary possibility.
By virtue of the law we have identified in examining issues I and II, we must reverse the amount of the judgment awarded for severance damages and remand for jury trial proceedings to be conducted in conformity with the controlling legal principles.

III
We find unmeritorious the state's claim that it was error for the court to strike, on the owners' motion, the state's reply to the owner's affirmative defenses. In that reply, the state contended that because the owners clearly knew the strip of land now being taken was earmarked as a future right-of-way, any damage the owners now claimed was attributable to the owners' own negligence or illegal use of the land being appropriated. If the land had been a dedicated street or way, or if it were shown that the owners had, in bad faith, made improvements on the right-of-way merely so that they could collect damages, the state's reply would have merit. But a public entity's mere future intention to condemn land may not operate to prevent the landholder from using the land for a lawful purpose. To say otherwise is to confer on an indefinite and uncertain public plan, which may or may not be carried out in the foreseeable future, essential attributes of an actual taking, while the landowner remains uncompensated for the damage until the taking actually occurs, if it does. We think the applicable law is well-stated in Babinec v. State, 512 P.2d 563 (Alaska 1973). The trial court did not err in striking the state's reply to the owners' affirmative defenses.

IV
Inasmuch as we reverse the severance damage award, we must also reverse the award of attorney's fees, which was predicated on the award to condemnees. See Division of Administration, State of Florida Department of Transportation v. Consolidated  Tomoka Land Company, Inc., 448 So.2d 12, 13 (Fla. 4th DCA 1984).
The award for the land actually taken stands; the award for severance damages is reversed and remanded for retrial before a jury.
BARKETT, J., concurs.
LETTS, J., concurs in conclusion only.

*230 ON MOTION FOR REHEARING
PER CURIAM.
Not finding that this court overlooked or misapprehended any evidence presented at trial or the applicable law, we deny the motion for rehearing, as well as the alternative motion to certify an important public question to the Florida Supreme Court.
It is ordered, however, pursuant to section 73.131(2), Fla. Stat. (1983), that reasonable appellate attorney's fees be assessed against petitioner/appellant in favor of respondent/appellee, Frenchman, Inc.
LETTS, GLICKSTEIN and BARKETT, JJ., concur.