VILLANTI, Judge.
This case presents an issue of first impression in Florida concerning whether an innocent property owner can state a cause of action under the takings clause of either the Florida Constitution or the United States Constitution when the police destroy private property while executing a valid search warrant. The trial court held that neither constitution would support a cause of action for a taking under these facts. While we disagree with some of the trial court’s reasoning, we agree that no cause of action for a taking exists under *1147 the facts in this case. Therefore, we affirm.
The facts in this case are essentially undisputed. Certain Interested Underwriters at Lloyd’s London (“Lloyd’s”) insured a residence in the city of St. Peters-burg (“the City”) owned by Myria Major. Major lived in another state and rented the residence to tenants. While the City’s police officers were executing a valid search warrant on Major’s tenants, they threw “flash-bang” grenades into the lower level of the residence in an effort to startle the occupants into giving up. These grenades were designed to simply make a loud noise and cause a brilliant flash of light. However, in this case, the lower level had insulating foam installed on the walls and ceilings to muffle the sounds of the tenants’ recording studio, and the grenades started a fire. This fire spread very rapidly, and the residence was entirely destroyed. There is no evidence, nor does the City contend, that Major knew about any of the alleged illegal activity giving rise to the search warrant.
Major sued the City for her losses under Florida’s Tort Claims Act, section 768.28(9), Florida Statutes (2002), alleging negligence in the use of the grenades. After Lloyd’s paid Major her policy limits under her insurance policy, the trial court permitted Lloyd’s to intervene as Major’s subrogee in her action against the City. Lloyd’s then filed a two-count complaint alleging an unconstitutional taking without just compensation under article X, section 6(a), of the Florida Constitution in count one and negligence under the Tort Claims Act in count two. The City moved to dismiss the takings count, arguing that no such cause of action existed as a matter of law under these facts. The trial court agreed and dismissed that count with prejudice. The trial court also denied Lloyd’s motion for leave to amend its complaint to state a cause of action for an unconstitutional taking under Article V of the United States Constitution. Lloyd’s now appeals both orders.
Article X, section 6(a), of the Florida Constitution states that “[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner or secured by deposit in the registry of the court and available to the owner.” Article V of the United States Constitution states, in pertinent part, “nor shall private property be taken for public use, without just compensation.” Historically, these provisions required the government to pay for property that it seized through an exercise of its eminent domain power. The takings clause of the United States Constitution was “intended to restrain the arbitrary and oppressive mode of obtaining supplies for the army, and other public uses, by impressment, as was too frequently practiced during the revolutionary war, without any compensation whatever.” 1 Henry St. George Tucker, Blackstone’s Commentaries app. at 305-06 (Philadelphia, Birch & Small 1803). Thus, the guiding principle of takings law as gleaned from original intent is to prohibit the government from simply appropriating private property for public use without compensating the owner.
The Florida courts have adopted this understanding of the intent of the takings clause and have prohibited the government from appropriating private property for public purposes without just compensation. See Joint Ventures, Inc. v. Dep’t of Transp., 563 So.2d 622, 624 (Fla.1990). Under Florida law, a per se taking occurs when the government “requires the landowner to submit to the physical occupation of his land.” Fla. Game & Fresh Water Fish Comm’n v. Flotilla, Inc., 636 So.2d 761, 764 (Fla. 2d DCA 1994) (quoting *1148 Yee v. City of Escondido, 508 U.S. 519, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992)). The required “physical occupation” arises when the government “permanently deprives the owner of his ‘bundle’ of private property rights, including the right to possess and dispose, as well as the right to prevent the government from using the occupied area.” Flotilla, Inc., 636 So.2d at 764 (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982)); see also Joint Ventures, Inc., 563 So.2d at 624 (holding that the state must pay property owners when it confiscates private property for common use under its eminent domain power).
In addition to actual physical takings, both the Florida and federal courts have held that a taking can occur when the government enacts a regulation or imposes a condition that interferes with private property rights. Flotilla, Inc., 636 So.2d at 764. However, because many regulations or conditions will interfere with private property rights to some extent, a compensable taking occurs only when the regulation deprives the landowner of substantially all beneficial use of all or a distinct portion of the property or if the regulation or condition is not reasonably necessary to effectuate a substantial government purpose. See, e.g., Dolan v. City of Tigard, 512 U.S. 374, 388, 114 S.Ct. 2309, 129 L.Ed.2d 304 (1994) (holding that a condition that the property owner dedicate ten percent of her property as a pedestrian/bicycle path in order to obtain requested building permits constituted a taking); Lucas v. S.C. Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992) (finding a compensable taking under the United States Constitution because the regulation at issue denied the property owner all economically beneficial use of his property in the name of common good); Pa. Coal Co. v. Mahon, 260 U.S. 393, 415, 43 S.Ct. 158, 67 L.Ed. 322 (1922) (“[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.”); Joint Ventures, Inc., 563 So.2d at 624 (holding that the state must pay property owners when it regulates private property in such a way as to deprive the property owner of all economically viable use of the property); Dep’t of Agric. & Consumer Servs. v. Mid-Florida Growers, Inc., 521 So.2d 101 (Fla.1988) (holding that a taking occurs when the effects of a regulation are so complete as to deprive the owner of all or most of his interest in the property).
The case before this court clearly does not involve a regulatory or conditional taking; however, neither does it involve a classic per se taking. Lloyd’s does not, and in fact cannot, contend that the City has required Major to submit to the physical occupation of her property. Further, it is clear that the City has not deprived Major of her right to use or dispose of her property, nor has the City deprived Major of her right to prevent the government from using the occupied area. Rather, Major’s complaint springs from the destruction of a residence on her property that resulted from the City’s admittedly legal actions on her property. This type of destruction has not historically constituted a compensable taking under article X, section 6(a), of the Florida Constitution, and we decline to extend the takings clause to apply to such destruction.
In 1947, the Florida Supreme Court held that certain damage to private property simply has no remedy at law.
Any injury or damage which is occasioned by the doing of a lawful act or the exercise of a legal right, or by doing a thing, authorized by law, in the authorized way, is damnum absque injuria. Damage resulting from such an act, to be actionable, must be coupled with some negligence or misconduct, or the *1149 act must have been done at a time, or in a manner, or under circumstances, which render the actor chargeable with want of proper regard for the rights of others. In doing a lawful thing in a lawful way no legal right is invaded, although the act may result in damage to another.
... Nor can an action be maintained for damages resulting to individuals from acts done by persons in the execution of a public trust and for the public benefit, acting with due skill and caution and within the scope of their authority.
Paty v. Town of Palm Beach, 158 Fla. 575, 29 So.2d 363, 363 (1947). In applying this rationale to takings claims, Florida courts have held that when government actors cause damage to property as a result of their lawful actions performed without negligence, no compensable taking has occurred under the Florida Constitution. See, e.g., Div. of Admin. v. Frenchman, Inc., 476 So.2d 224, 229 (Fla. 4th DCA 1985); Div. of Admin. v. Hillsboro Ass’n, 286 So.2d 578, 579 (Fla. 4th DCA 1973). Only if government actors cause damage as a result of their negligence or misconduct will the property owner have redress through a tort action or a legislative claims bill. Frenchman, Inc., 476 So.2d at 229; Hillsboro Ass’n, 286 So.2d at 579.
In addressing this issue under the United States Constitution, the United States Supreme Court has made the identical distinction. Damage or destruction that occurs as an unintended, incidental consequence of lawful activity by. government actors does not constitute a compensable taking. Cf. Armstrong v. United States, 364 U.S. 40, 48, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) (distinguishing compensable takings actions from noncompensable incidental or consequential damage); United States v. Cent. Eureka Mining Co., 357 U.S. 155, 169, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958). Rather, any redress for incidental damage caused by government actors must sound in tort. See Ridge Line, Inc. v. United States, 346 F.3d 1346 (Fed.Cir.2003) (holding that the line between torts and takings depends on whether the damage at issue is the inevitable result of the government’s intentional act and that incidental damage is compensable, if at all, only in tort).
In this case, Major has suffered the destruction of her property as a consequence of the lawful actions of the City’s employees who were performing their lawful duties. Under both Florida and federal law, any damage resulting from these lawful activities does not constitute a taking. If Lloyd’s can allege that the City’s employees were negligent in performing their duties, the proper cause of action is under the Tort Claims Act. Otherwise, the damages are simply damnum absque inju-ria.
In arguing for reversal, Lloyd’s relies on two out-of-state cases for the proposition that the damages Major suffered give rise to a takings claim: Steele v. City of Houston, 603 S.W.2d 786 (Tex.1980), and Wegner v. Milwaukee Mutual Insurance Co., 479 N.W.2d 38 (Minn.1991). While both of those cases involved factual situations similar to this case, both applied state constitutional provisions very different from Florida’s, and neither addressed the takings clause of the United States Constitution, thus rendering their holdings irrelevant to the resolution of this case.
The Texas Constitution, applied in Steele, provides that “[n]o person’s property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made.... ” Tex. Const, art. I, § 17. Similarly, the Minnesota Constitution, applied in Wegner, provides that “[pjrivate property shall not be taken, destroyed or damaged for public use without just compensation, first paid or secured.” Minn. Const, art. I, § 13. *1150 Both courts held that their constitutional provisions concerning damage or destruction of property for public use created a cause of action under their respective state constitutions for damage caused by police during the lawful execution of their duties. Neither case, however, addressed the issue of whether the property owners could state a cause of action for a “taking” of their property. Moreover, neither case addressed whether a takings claim existed under the United States Constitution on the facts presented. Because neither the Florida nor the United States Constitution contains provisions concerning compensation for damage or destruction of private property for public use, our decision cannot be guided by Steele or Wegner.
Instead, we, like the trial court, are persuaded by the reasoning of the California Supreme Court in Customer Co. v. City of Sacramento, 10 Cal.4th 368, 41 Cal.Rptr.2d 658, 895 P.2d 900 (1995). As with Steele and Wegner, the facts in Customer Co. are similar to those presented here. In Customer Co., a fugitive took refuge inside Customer Company’s convenience-type store. Customer Co., 41 Cal.Rptr.2d 658, 895 P.2d at 903. After a lengthy stand-off, the police threw tear gas into the store. This action not only broke windows and damaged mirrors and ceiling tiles, but it also contaminated the store’s entire inventory. Id. at 904. Customer Company sought $275,000 in damages under the takings clause of the California Constitution, contending that the damage to the store and inventory constituted a taking of that property for public use.
The California constitutional provision at issue provided, “Private property may be taken or damaged for public use only when just compensation, ascertained by a jury unless waived, has first been paid to, or into court for, the owner.” Cal. Const, art. I, § 19. In affirming a judgment on the pleadings in favor of the City of Sacramento, the California Supreme Court noted that Customer Company’s property was, in fact, damaged for a public purpose. However, the court then noted that the takings clause “never has been applied in a literal manner, without regard to the history or intent of the provision.” Id. at 906. The court pointed out that the only historically settled application of the takings clause was to require the government to pay for property it seized through an exercise of eminent domain. Id. The court recognized that the takings clause had been expanded to allow for recovery when property that was not physically taken by the government was damaged by government actions on adjoining property. Id. at 907. However, the court held that there was no indication that the takings clause was ever intended to require payment for damage caused by the government’s efforts to enforce criminal laws. Id. “[Djamage caused by the negligent conduct of public employees or a public entity does not fall within the aegis of section 19” Id. at 908 (citing Miller v. City of Palo Alto, 208 Cal. 74, 280 P. 108 (1929)).
Relying on both Florida precedent and the reasoning in Customer Co., we agree with the trial court that no takings claim can exist based on the facts presented by this case. Lloyd’s claim is compensable, if at all, as a tort rather than a taking. Thus, the trial court properly dismissed the Florida constitutional claim in Lloyd’s complaint and properly denied Lloyd’s leave to amend to add a claim under the United States Constitution. Accordingly, we affirm.
Affirmed.
WHATLEY, J„ and BARTON, JAMES M., II, Associate Judge, Concur.