953 So.2d 720 (2007)
CITY OF JACKSONVILLE, Appellant,
v.
TWIN RESTAURANTS, INC., Appellee.
No. 1D05-5770.
District Court of Appeal of Florida, First District.
April 9, 2007.
Richard A. Mullaney, General Counsel, Bruce Page, Assistant General Counsel, and Scott D. Makar, Chief, Appellate Division, Jacksonville, for Appellant.
Paul M. Harden and D.R. Repass, Jacksonville, and Michael J. Korn of Korn & Zehmer, P.A., Jacksonville, for Appellee.
BENTON, J.
The City of Jacksonville appeals the final judgment entered in an eminent domain case insofar as it awarded Twin Restaurants, Inc. (Twin) $685,000 in "severance damages," in addition to the $143,420 it awarded for the part (Parcels 106, 706, and 806) of Twin's property that the City actually took. We reverse.
Owner of the southwest corner of Blanding Boulevard and Collins Road in Jacksonville, Twin does not challenge the trial court's Order of Taking. Parcel 106, a strip adjacent to Collins Road, became the City's property in fee simple. As to Parcel 806, the City took a permanent easement, and, as to Parcel 706, a temporary construction easement. We do not disturb the $143,420 award of compensation for the interests in Parcels 106, 706 and 806. But we reverse the final judgment insofar as it awards an additional $685,000 (plus interest) in severance damages on account of changes in traffic flow anticipated from construction of a new median in Collins Road on property the City already owns.
The City took a strip thirteen feet wide at its widest point for a new sidewalk, curb, gutter, and bicycle lane, and to install drainage pipes, all in connection with widening Collins Road from two lanes to four lanes, adding turn lanes and a median. This taking did not entail loss of a single space in the parking lot for the Burger King restaurant that stands on Twin's property. Twin asserted, however, that building a new median in Collins Road would discourage westbound drivers who wanted to turn left in order to patronize the Burger King (or any other fast food *721 franchisee Twin might lease to) and would interfere with or complicate the egress of customers leaving the Burger King parking lot who wanted to end up traveling west on Collins Road.
The City filed a motion in limine, seeking an order excluding as irrelevant testimony or other evidence about the effects of constructing a median on Collins Road. The motion relied on Division of Administration, State Department of Transportation v. Capital Plaza, Inc., 397 So.2d 682 (Fla.1981), in which our supreme court had held severance damages unavailable in an eminent domain proceeding, if based on reduced access attributable to median construction in an abutting roadway. Id. at 683. In Capital Plaza, the court said:
DOT constructed the median within its previously owned right of way. Construction of the median, not the taking, caused the alleged damage. Severance damages are not available for a change in traffic flow.
. . . . [T]o receive severance damages, any complained-of impairment must result directly from a taking.
Id. But the learned trial judge (Judge Mitchell's predecessor on the case) denied the motion in limine, on the purported authority of Lee County, Florida v. Exchange National Bank of Tampa, 417 So.2d 268, 269-70 (Fla.2d DCA 1982) (positing an exception allowing severance damages for effects emanating offsite "where the use of the land taken constitutes an integral and inseparable part of a single use to which the land taken and other adjoining land is put" and "it is impossible to separate the damages caused by the small portion of the . . . taken land from the damages caused by the [project] as a whole").
Denial of the motion in limine was error. Under Capital Plaza, all evidence related to changes in traffic flow resulting from construction of the median should have been excluded. See 397 So.2d at 683 ("[L]andowners have no compensable interest in traffic flow. . . ."). See also Dep't of Transp. v. Fisher, 31 Fla. L. Weekly D1904, D1904, ___ So.2d ___, ___, 2006 WL 1933416 (Fla.2d DCA July 14, 2006) ("Because a property owner has no right to a specific level of traffic flow, the question of whether access has been diminished or destroyed must focus on physical access to the property itselfnot the amount of traffic that can or will pass by the property postconstruction.") (citation omitted); Div. of Admin., State of Fla. Dep't of Transp. v. Ness Trailer Park, Inc., 489 So.2d 1172, 1179 (Fla.4th DCA 1986) ("There was no basis in law for letting the jury hear testimony respecting severance damages purportedly because of loss of access; nor was the basing of such damages on the overall impact of the comprehensive project permissible."); Lee County, 417 So.2d at 271-72 ("While the value of its entire property may have been greatly reduced by virtue of the construction of the nearby [public improvement offsite], the appellee could make no claim for severance damages if the county had not chosen to condemn any of its property. Yet, the appellee will be in no different position as a result of the taking. . . . Hence, it was error for the court to permit the appellee's appraisers to predicate their opinions upon consequential damages caused to the remainder by the proximity to the [public improvement offsite].") (citation omitted); City of Orlando v. Cullom, 400 So.2d 513, 516 (Fla.5th DCA 1981) (ruling that "the restriction of vehicular traffic past the point of appellees' building" was not a taking).
The testimony of Ronald Moody, Twin's appraiser, began by tracking the City's appraisal as to the value of the interests *722 taken in Parcels 106, 706, and 806.[1] Mr. Moody testified he took the City's total figure for the three parcels$105,030as a starting point, but added approximately $38,390 for "what will [have to] be done after everything is done as far as putting things back," bringing his estimate for total compensation for the taking to $143,420. This is the figure the jury adopted as total compensation for the interests taken in Parcels 106, 706 and 806, and neither party has contested this amount.
Twin put on no evidence that the actual taking of its property, as opposed to effects it anticipated from median-induced changes in traffic flow, would cause any severance damages. See Capital Plaza, 397 So.2d at 683 ("When less than the entire property is taken, compensation for damage to the remainder can be awarded only if such damage is caused by the taking.") (emphasis supplied).
Ronald Moody did testify that the highest and best use of Twin's property in the "before" condition was as a fast food restaurant, and would become what he described as a "slow food" or "destination" restaurant, in the "after" condition, the latter being less profitable, negatively affecting the resale value of the property. But the entire reason for this putative change in property value was, Mr. Moody testified, that the property would be harder to get in and out of quickly for certain driverssolely on account of the change in traffic flow resulting from construction of the new median.
Twin also presented conclusory testimony that access would be "substantially diminished," but it did not dispute that all driveways would still be open after the City finished the improvements contemplated. The City's appraiser, Mr. Veasey, testified that losing the "left-in/left-out access" from Collins Road would cause no permanent damage to the remainder and would not diminish its value.[2] Twin's case on "diminished access" boiled down to evidence that westbound traffic onto or out of the property would have to travel a more circuitous route.[3]
As a matter of law, this is not "substantially diminished" access of the kind that would constitute a compensable taking. See Fisher, 31 Fla. L. Weekly at D1904, ___ So.2d at ___ ("[M]ere circuity of access is not compensable unless the remaining access to the property is `substantially diminished.'"). See, e.g., Rubano v. Dep't of Transp., 656 So.2d 1264, 1269 n. 3 (Fla. 1995) ("[R]oadway abandonment, construction or realignment which results in inconvenience or mere circuity of access to abutting landowners does not give rise to a compensable injury.") (internal quotation marks and quoted source omitted); State, Dep't of Transp. v. S.W. Anderson, Inc., 744 So.2d 1098, 1102 (Fla.1st DCA 1999) *723 (reversing award of compensation because, at most, "one must now travel a less convenient route from the newly constructed SR 79 to Anderson's property"); State, Dep't of Transp. v. Weggies Banana Boat, 576 So.2d 722, 724 (Fla.2d DCA 1990) ("[A]ny decrease in visibility or increased circuity of access . . . suffered as a result of the overall design of the project is not compensable."). Compare Palm Beach County v. Tessler, 538 So.2d 846, 850 (Fla.1989) (affirming award of severance damages because property owners' primary point of access to the remainder was rendered completely useless by construction of a retaining wall between their road and what was left of their property, diminishing the value of the remainder).
When Twin's experts were asked to estimate severance damages, if any, apart from the median's effects, they stated that they could not separate the portion which related to the actual taking of Twin's property from the portion related to a change in traffic flow because of the new median. In short, Twin took the position that severance damages could not be evaluated, apart from the purported effects of the new median in Collins Road.
The verdict form asked the jury to determine whether the City's use of land taken from Twin constituted "an integral and inseparable part of a single use to which the land taken and other adjoining land is put," and whether access to Twin's property had been "substantially diminished" as a result of the new median, and, in either event,[4] permitted an award of severance damages. The trial court instructed the jury on the "general rule" stated in Capital Plaza and, over the City's objection, on the supposed Lee County exception. The City's objection was well taken.[5]
In answering the specific questions the interrogatory verdict put to it, the jury "ruled" that the City's use of land taken from Twin did constitute "an integral and inseparable part of a single use to which the land taken and other adjoining land is put," and that access to Twin's property had been or would be "substantially diminished" by the median, which the jury treated as part of the widening project for which Twin's property was taken. Proceeding from this predicate, the jury awarded Twin severance damages of $685,000.
The jury's preliminary "rulings," like the award itself, fly in the face of our supreme *724 court's decision in Capital Plaza. See 397 So.2d at 683 ("We hold that landowners have no compensable interest in traffic flow and that, in order to receive severance damages, any complained-of impairment must result directly from a taking."). See also Dep't of Transp. v. RFT P'ship, 906 So.2d 1161, 1168 (Fla.2d DCA 2005) (reversing award of severance damages where "an isolated change [in grade] in an intersection on property that the DOT already owned" took place, because "the land taken . . . does not fit within the [Lee County] exception . . . [and] any decrease in value to the property . . . that might have resulted from a change in grade at the intersection is clearly caused by design issues independent of the small slice of property taken," and concluding that "[u]nder the ruling in [Capital Plaza], severance damages are not available for such a change"); Jacksonville Expressway Auth. v. Milford, 115 So.2d 778, 781-82 (Fla.1st DCA 1959) ("The rule is well settled here that damages are not allowable to a property owner for a change in grade or other alteration in a street in which the public holds an existing easement for street purposes. . . . [W]e find no facts . . . entitling the appellee-landowners to recover damages for the change in grade of the preexisting right of way [where condemnation of the subject property did not produce or combine to produce the results of which appellee complains]. The fact that incident to such a change in grade in the preexisting right of way there occurs a simultaneous or coincidental condemnation of property abutting the preexisting right of way does not vary the rule.").
Twin took the position at trial that the two parts of the projectthe median construction and the widening which necessitated the taking of Twin's propertywere inseparable. Each witness Twin called concerning severance damages testified that construction of the median was an integral component of a single project and that severance damages could not be evaluated or calculated without taking construction of the median into account. (The City countered that the two portions of the project were distinct, and that construction of the median was not dependent on the acquisition of the thirteen-foot-wide strip of Twin's property.)
Twin thus made a tactical decision to proceed under the theory of the Lee County exception in its effort to obtain substantial severance damages on account of effects on traffic flow anticipated from construction of the new median. Twin's answer brief acknowledges that its only bases for seeking severance damages were "the Lee County exception" and "substantial diminution in access." Both theories rest on the asserted effects of the new median. The record shows not only that Twin could not prove severance damages apart from the median, but that it declined every opportunity to do so. It is not at liberty to abandon this position on appeal and has not, indeed, sought to do so. In the circumstances, no remand is necessary.
The final judgment is reversed, insofar as it awards $685,000 in severance damages and interest thereon.
WEBSTER and VAN NORTWICK, JJ., concur.
NOTES
[1] At trial, John Veasey, the City's appraiser, valued the land taken from Parcel 106 at $77,680; the temporary construction easement in Parcel 706 at $26,250; and the permanent easement in Parcel 806 at $1,100.
[2] Twin proved that taking the strip would require shortening the driveways onto Collins Road, decreasing by one or more the number of cars that could wait in line for the "drivethru window." Twin did not try to prove this would actually affect Burger King's sales.
[3] The new median would require westbound travelers on Collins Road to make a left turn onto Blanding Boulevard southbound, then turn right immediately, or proceed about 900 feet along the new median and make a U-turn, to reach the Burger King. Travelers leaving westbound, unable to turn left onto Collins Road, could either turn right onto Collins Road and make a U-turn, or turn right onto Blanding Boulevard southbound, make a U-turn, then turn left onto Collins Road westbound at the intersection of Blanding Boulevard and Collins Road.
[4] In effect, these instructions gave the jury legal questions to decide preliminary to and as a condition for fact finding. But see Palm Beach County v. Tessler, 538 So.2d 846, 850 (Fla.1989) ("[I]n an inverse condemnation proceeding . . ., the trial judge makes both findings of fact and findings of law. As a fact finder, the judge resolves all conflicts in the evidence. Based upon the facts as so determined, the judge then decides as a matter of law whether the landowner has incurred a substantial loss of access by reason of the governmental activity."); Dep't of Transp. v. Fisher, 31 Fla.L. Weekly D1904, D1904, ___ So.2d ___, ___, 2006 WL 1933416 (Fla.2d DCA July 14, 2006). See also § 73.071(3)(b), Fla. Stat. (2005) ("The jury shall determine solely the amount of compensation to be paid, which compensation shall include:. . . . Where less than the entire property is [taken], any damages to the remainder caused by the taking[.]") (emphasis supplied).
[5] The supreme court has made unmistakably clear that no such exception is available where, as here, severance damages are claimed on the basis of a traffic median constructed on property the City already owned. We need not, therefore, decide whether the Second District's discussion in Lee County of an exception to the ban on severance damages for effects attributable to works on property not taken from the landowner (and its subsequent application of the Lee County exception in Taylor v. State, Department of Transportation, 701 So.2d 610, 611-12 (Fla. 2d DCA 1997)), should be adopted as the law of this district in some other circumstance.